**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| STEVE MILLER, RICHARD KOTELLY, KATHLEEN RIORDAN,  CHARLENE LIDDLE, KRISTA PIERSKALLA AND REBECCA MCCORMICK on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br><br>**CLASS ACTION COMPLAINT** |
| Plaintiffs, | )<br>) | **JURY TRIAL DEMANDED** |
| vs. | )<br>) | |
| HYUNDAI MOTOR AMERICA, | )<br>) | |
| Defendant. | ) | |

_____

Plaintiffs, Steve Miller, Richard Kotelly, Kathleen Riordan, Charlene Liddle, Krista Pierskalla and Rebecca McCormick ("Plaintiffs"), on behalf of themselves and all others similarly situated, by their undersigned counsel, allege, against Defendant Hyundai Motor America ("Hyundai" or "Defendant"), the following upon personal knowledge as to their own acts, and based upon the investigation conducted by their counsel, as to all other allegations:

**SUMMARY OF THE ACTION**

1.     Plaintiffs bring this class action complaint on behalf of themselves and all other citizens nationwide who purchased and/or leased (collectively "purchasers") a Hyundai Sonata ("Sonata"), model years 2006 through 2010 ("Class Vehicles"), and which vehicles had or currently have a defective rotor/caliper and brake assembly (the "Class").  Alternatively, Plaintiffs assert herein a multi-state class comprised of multi-state owners and lessees in the states in which Plaintiffs reside and/or purchased their vehicles as set forth herein.

1

2.     As alleged in detail below, Sonatas are equipped with defective brakes.  Due to these defective parts, Sonatas manifest significant squealing and premature deterioration of the rotors brake clamps (also referred to as assembly) and pads and sticking of calipers when the brake pedal is applied if the defect is not corrected by replacement of brake pads, rotors and calipers and brake assembly.  These defects are unreasonably dangerous, as they can cause the braking system components to become severely worn and damaged, and may lead to a complete failure of the braking system.

3.     By pre-release data and testing, analysis of service and maintenance reports, and trends, knowledge of the material and manufacturing specifications, the quality imparted to the entire brake assembly and its parts in the process of manufacturing and by complaints of its customers, Hyundai was on notice that the Sonata vehicles' brake assemblies were defective and not fit for their intended purpose of properly and effectively bringing the automobile to a stop. Hyundai actively concealed and failed to disclose the existence and nature of said defects from Plaintiffs and the Class members at the time of purchase and thereafter.  Hyundai has not recalled the Sonata to repair the defects, nor has it offered to repair the defects to its customers free of charge, nor has it offered to reimburse Hyundai owners, present or past, who incurred costs relating to braking system repairs.

**The Warranty Provisions**

4.     Hyundai's brand, when first introduced to this country, was perceived as a low-end vehicle of relatively low quality.  To enhance the public's perception of the brand, Hyundai increased its warranty's durational period and introduced a campaign which sought to tout its warranty as the "Best Warranty in America".  The clear intention was, by demonstrating the most

robust warranty available, consumers would be able to rely on the confidence the manufacturer placed in its vehicle's quality by standing squarely behind it.  As a result, Hyundai sales significantly increased.[1]

5.      Pursuant to the new vehicle "bumper to bumper" express warranty given to all purchasers of the Sonata, Hyundai is responsible for all repair and labor associated with the repair and service of defective parts.  That warranty (referred to herein as the "Basic Warranty") was effectively for 60,000 miles or 60 months, whichever came first.  Although the Basic Warranty purports to exclude "brake pads" and "brake linings", the brake components involved herein, brake rotors, calipers, and brake clamps (metal holders for the pads) are not excluded items under the Basic Warranty.  Moreover, brake rotors, calipers and the brake clamps (also referred to as the brake "assembly") are not "wear and tear items" which one would expect to be excluded.  For example, the Basic Warranty for the 2008 Sonata, which, upon information and belief is typical of the basic Warranty for the Class Vehicles herein, states in pertinent part:

> **WARRANTOR**
> Hyundai Motor America (HMA) warrants your new 2008  . . .
> Hyundai vehicle pursuant to the limited warranties described in this
> Owner's Handbook.
>
>        *                   *                   *
>
> **WHAT IS COVERED**
> Repair or replacement of any component originally manufactured or
> installed by Hyundai Motor Company, Hyundai Motor Group,
> Hyundai Motor manufacturing Alabama (HMMA) or Hyundai

---

[1] See, for example, "Consumer Perception of Warranty As Signal of Quality:  An Empirical Study of Powertrain Warranties."  Amherst College White Paper, dated March 2010. https://www3.amherst.edu/~jishii/files/WT_final_mar_2010.pdf

Motor America (HMA) that is found to be defective on material or workmanship under normal use and maintenance, except any item specifically referred to in the section "What is Not Covered." …

**WARRANTY PERIOD**

The warranty period is limited to 5 years from the date of original retail delivery or date of first use, or 60,000 miles, whichever occurs first.

         \*               \*              \*

**WHAT IS NOT COVERED**

Normal maintenance items (#) are warranted in normal service, only when the replacement is the result of a defect in material or factory workmanship, for 12 months from the date of original retail delivery of date of first use, or 12,000 miles, whichever occurs first, or up to the first scheduled maintenance replacement interval. (#- such as belts, brake pads and linings, clutch linings, filters, wiper blades and all bulbs except halogen bulbs which are covered up to 3 years from the date of original retail delivery or date of first use, or 36,000 miles, whichever occurs first.)

6.      While the Basic Warranty covers the braking system (except for brake pads and linings as noted above) for 60 months or 60,000 miles, Hyundai has refused to cover these non-excluded parts under "America's Best Warranty."   Rather, Hyundai claims the repairs and replacements resulting from the defect, are caused by normal wear and tear, thereby asserting that it has no obligation to remedy the problem when the symptoms materialize.   Further, if the defect has occurred after the warranty has expired, Hyundai has also claimed that the warranty on the entire braking system is inapplicable notwithstanding its prior knowledge of the defect.   Consequently, Plaintiff and the Class Members have been required to pay for the repairs of the brake assemblies themselves.   7.Plaintiffs allege that Hyundai is responsible and liable for the costs of replacing the defective brake assemblies including reimbursement to them and members of the class for needed repairs already performed.

4

## **PARTIES**

8.      Plaintiffs, Steve Miller, Richard Kotelly, Kathleen Riordan, Charlene Liddle, Krista Pierskalla and Rebecca McCormick bring this action in an individual capacity and on behalf of all others similarly situated.

9.      Plaintiff Steve Miller at all relevant times is and was a resident of the Borough of Brooklyn, County of Kings, State of New York.  In or about November 2007, Plaintiff Miller purchased a 2008 Sonata from a Hyundai dealership, located in Brooklyn, New York.

10.      Plaintiff Richard Kotelly at all relevant times is and was a resident of the Town of Billerica, County of Middlesex, State of Massachusetts.  In or about November 2005, Plaintiff Kotelly purchased a 2006 Sonata from a Hyundai dealership in Arlington, Massachusetts.

11.      Plaintiff Kathleen Riordan at all relevant times is and was a resident of the Village of Island Lake, County of McHenry, State of Illinois.  In or about April 2010, Plaintiff Riordan leased a 2010 Sonata from a Hyundai dealership, located in Algonquin, Illinois.

12.      Plaintiff Charlene Liddle at all relevant times is and was a resident of the City of Syracuse, County of Onondaga, State of New York.  In or about 2006, Plaintiff Liddle purchased a 2006 Sonata from a Hyundai dealership in Syracuse, New York.

13.      Plaintiff Krista Pierskalla at all relevant times is and was a resident of the City of Saint Cloud, County of Stearns, State of Minnesota.  In or about September, 2010, Plaintiff Pierskalla purchased a 2009 Sonata from a Hyundai dealership in White Park, Minnesota.

14.      Plaintiff Rebecca McCormick at all relevant times is and was a resident of the Town of Levittown, County of Bucks, State of Pennsylvania.  In or about March, 2012, Plaintiff

McCormick purchased her 2009 Hyundai Sonata as a used car from City Auto Park in Burlington, New Jersey.

15.     At the time of their respective purchases, plaintiffs Steve Miller and Charlene Liddle, were citizens of the State of New York, Plaintiff Richard Kotelly was a citizen of Massachusetts, Plaintiff Kathleen Riordan was a citizen of Illinois, Plaintiff Krista Pierskalla was a citizen of Minnesota and Rebecca McCormick was a citizen of Pennsylvania.  Upon purchase, each of the vehicles were registered and insured in the States of New York, Massachusetts, Illinois, Minnesota and Pennsylvania.  Plaintiffs intended to use and did use their respective vehicle in New York, Massachusetts, Illinois, Minnesota and Pennsylvania.

16.     Defendant Hyundai is a foreign corporation, with its principal place of business and national headquarters located in California.  Defendant Hyundai is registered to do business in New York as a foreign corporation and has designated the New York Secretary of State as its agent for service of process in New York, which, in turn, is authorized to serve Hyundai's registered agent in New York, which is National Registered Agents, Inc., Suite 140, 1666 Walt Whitman Road, Melville, New York 11747.  Defendant designs, manufactures and sells automobiles and other vehicles under its Hyundai brand name throughout the United States, including in the State of New York.  In addition, Defendant's Sonata models are advertised, distributed and sold at multiple places of business in the State of New York through Defendant's dealers, located at: Mt. Kisco, Bedford Hills and Watertown, New York, among other places.  These locations were, and are maintained by, Defendant's dealers and agents for the sale of Defendant's vehicles, including the Sonata and the Defendant has sold the model years in question in the State of New York to Plaintiffs and members of the Class during the Class Period.

## JURISDICTION AND VENUE

17.     This Court may assert diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and at least two Plaintiffs reside and are citizens of New York and Defendant is a foreign corporation registered to do business in New York.

18.     This Court may assert diversity jurisdiction of this matter under the Class Action Fairness Act, in that the acts occurred in New York, at least two of the named Plaintiffs are New York citizens, Defendant is not a New York citizen and the Defendant has alleged in this action that the amount in controversy exceeds $5,000,000.

19.     The action has been brought in this jurisdiction because it has a distinct nexus with class members, the alleged harm and Defendant is located in the district.  Moreover, a related case is being litigated in the district and pursuant to 28 U.S C. §1404, venue would best be situated in the interests of justice.

20.     The case is properly brought in this district as at least two of the named Plaintiffs reside in New York and Defendant has sold defective vehicles in the district, maintains sales and service authorized dealers in the district and advertises its vehicles for sale in the district.

21.     This Court has jurisdiction over Plaintiffs' Massachusetts, Illinois, Minnesota and Pennsylvania state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the other claims in this action that they form part of the same case or controversy.

## UNCONSCIONABILITY AND
## UNENFORCEABILITY OF ANY ARBITRATION CLAUSE

22.     To the extent Defendant has made individual arbitration a requirement to enforce the warranty, such requirement is unconscionable as Plaintiffs and the class cannot vindicate their

rights in arbitration.  In particular, the arbitration agreement requires that Plaintiffs pay $275 for the arbitration filing fees, in addition to any individual expenses they may incur (e.g., travel, time off from work or responsibilities, attorneys fees).   The cost of the brake repair and/or replacement is approximately $350-$450.  As a result, Plaintiffs and members of the class could not expect to vindicate their rights or seek a remedy in individual arbitration given the costs involved and the prospects of individual recovery.

23.     Moreover, Defendant has publicly waived any enforcement of its arbitration clause. As reported in the New York Times on or about December 6, 2013, Hyundai issued a statement saying it was dropping the arbitration clause "because we don't want people to be misled and think we don't stand behind America's best warranty." See

http://www.nytimes.com/2013/12/08/automobiles/warranty-clause-limits-hyundai-owner-rights.html?_r=0 (last accessed on April 27, 2015).

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### Plaintiff Steve Miller's Factual Allegations

24.     In or about November, 2007, while a citizen of the State of New York, Plaintiff Miller  purchased a new 2008 Sonata vehicle from a Hyundai dealership located in Brooklyn, New York.  The vehicle was delivered to Plaintiff and/or put in service in or about the end of 2007.

25.     At the time of purchase, Hyundai, through its dealership, employees, agents and servants represented to Plaintiff that it thoroughly inspected the vehicle, including its braking system, and that the entire vehicle was in good condition and fit for its intended purpose.  In fact, Defendant represented to Plaintiff and the Class members that such inspection was key to the efficient operation of the vehicle.  Defendant further represented to Plaintiffs and members of the

Class that their vehicles provided a high level of performance and affordable price, and that Hyundai operated the world's largest integrated automobile manufacturing facility which included complete state-of-the art testing facilities. Hyundai represented that the 2006 Sonata included "segment-leading standard safety features" which, by direct reference and by implication, the braking system would be a significant part.

26. When Plaintiff's vehicle had approximately 15,332 miles, in or about February, 2009, Plaintiff became aware of problems with the brakes when he noticed a burning smell from the right rear brake. Plaintiff brought the vehicle to the Hyundai dealership. The Hyundai dealership was unable to duplicate the burning smell.

27. In or about December, 2009, with approximately 24,000 miles on the vehicle, Plaintiff experienced the same problem with his rear brakes and brought it immediately to a local repair shop. The repair shop recommended a replacement of the rear brake caliper assembly, rotors and brake pads. Plaintiff thereupon contacted Defendant through its customer service call center and requested that Defendant cover the repair or replacement under 5 Year/60k Warranty as the vehicle was still within the 5 year 60,000 miles warranty, which request Defendant refused.

28. As a result, Plaintiff paid $355 for the rear brake repair.

29. On or about December, 2010, Plaintiff returned to the dealership again complaining of a burning smell emanating from his right rear tire. The dealership could not duplicate the problem.

30. Plaintiff has had continual problems with the rear brake pads seizing up in the calipers due to corrosion build up on the calipers. Plaintiff did not contact Hyundai for reimbursement of his subsequent repairs as he was previously told by the customer care center that

these brake repairs are not covered under warranty.  Instead, Plaintiff Miller purchased the parts himself and paid an independent mechanic to replace his brake components. He has replaced the calipers and rotors twice, in March, 2010 and September, 2011 and he has replaced the brake pads approximately 7 times.  Defendant's refusal to cover the repairs under warranty led Plaintiff to expend $527.73 for the rear brake repairs.  The post-sale denial of his warranty claim amounted to deceptive conduct under the New York Deceptive Acts and Practices statute and occurred within three years of initiating this action.

**Plaintiff Kotelly's Factual Allegations**

31.     Plaintiff Kotelly purchased a new 2006 Sonata in or about November 2005 from MIRAK Hyundai in Arlington, Massachusetts.

32.     When the vehicle had approximately 28,434 miles, the problem with brakes and rotors first occurred.  In June, 2010, Plaintiff brought the vehicle into the dealer for repair.  The dealer advised Plaintiff Kotelly that the brakes were in a dangerous condition and the dealer would not allow Plaintiff Kotelly to leave until the vehicle was repaired due to its dangerous condition.

33.     Plaintiff thereupon contacted Defendant through its dealer and requested that Defendant cover the repair or replacement under 5 Year/60k Warranty as the vehicle was still within the 5 year 60,000 miles warranty, which request Defendant refused.

34.     Defendant's refusal to cover the repair under warranty led Plaintiff to expend $305 for the rear brake repair.  The post-sale denial of his warranty claim amounted to deceptive conduct under the Massachusetts Consumer Protection Law and occurred within four years of initiating this action.

35.     Plaintiff was advised by the dealership on a recent visit that his rear brakes will need to be replaced again.  Plaintiff's vehicle has approximately 56,000 miles on it.

**Plaintiff Riordan's Factual Allegations**

36.     In or about April 2010, while a citizen of the State of Illinois, Plaintiff Riordan leased a new 2010 Sonata vehicle from a Hyundai dealership located in Algonquin, Illinois.  The vehicle was delivered to Plaintiff and/or put in service in or about April 2010.

37.     When Plaintiff's vehicle had approximately 30,860 miles, in or about July 24, 2013, Plaintiff became aware of problems with the brakes when she noticed rust around the rims of her tires and upon further inspection by a tire mechanic, she was told that her entire brake system was rusted and that the brakes were rusted closed.

38.     Plaintiff Riordan then telephonically contacted the Hyundai Customer Service Department who advised her to bring her vehicle to an authorized Hyundai dealership for service.

39.     Thereafter, Plaintiff brought the vehicle to Rosen Hyundai, an authorized Hyundai dealership, who determined that the brakes and rotors required replacement. Plaintiff requested that Defendant, through the dealer, cover the repair or replacement under 5 Year/60k Warranty as the vehicle was still within the 5 year 60,000 miles warranty, which request Defendant refused.

40.     As a result, Plaintiff had the brake pads and rotors replaced at her expense and paid $393.21.

41.     When Plaintiff's vehicle had approximately 37,856 miles, in or about July 8, 2014, Plaintiff became aware of problems with the brakes when she heard a horrible noise emanating from the rear brakes while braking.

11

42.      Plaintiff was so fearful to drive the vehicle that she had the car towed to Rosen Hyundai who determined that the left rear caliper, brake pads and rotors required replacement. The Hyundai service representative at the dealership stated that the cost of the replacement of the caliper, rotors and brake pads would be covered under warranty but that Plaintiff should have her front brakes replaced at a cost of $391.48.  Plaintiff Riordan requested that Defendant Hyundai, through the dealer, cover the repair or replacement under 5 Year/60k Warranty as the vehicle was still within the 5 year 60,000 miles warranty which request Defendant wrongly refused.

43.      A mere six months later, when Plaintiff's vehicle had approximately 40,426 miles, in or about January 26, 2015, Plaintiff, for the third time, became aware of problems with the brakes because of she once again heard a horrible noise emanating from the rear brakes while braking.

44.      Plaintiff brought the vehicle to the Rosen Hyundai dealership who determined that the right rear caliper, brake pad and rotor required replacement. Plaintiff again requested that Defendant, through the dealer, cover the repair or replacement under 5 Year/60k Warranty as the vehicle was still within the 5 year 60,000 miles warranty, which request Defendant wrongly refused.    The dealership stated that the cost of the repair would be $305.76.  Plaintiff Riordan was totally frustrated with both the expense for continuous repairs to the brakes on her vehicle and, more importantly, she was concerned about the safety of the car since brakes are a critical safety component.

45.      Defendant's refusal to cover the repairs under warranty led Plaintiff to expend $175.00 for the rear brake repairs.  The post-sale denial of her warranty claims amounted to deceptive conduct

12

under the Illinois Consumer Fraud and Deceptive Business Practice Act statute and occurred within five years of initiating this action.

**Plaintiff Liddle's Factual Allegations**

46.     In or about November, 2005, while a citizen of the State of New York, Plaintiff Liddle purchased a new 2006 Sonata vehicle from a Hyundai dealership located in Syracuse, New York.  The vehicle was delivered to Plaintiff and/or put in service in or about November, 2005.

47.     Plaintiff Liddle first experienced her rear brakes squeaking in August, 2006 when the vehicle had approximately 3,500 miles.  Plaintiff took the vehicle into Fuccillo Hyundai Dealership located in Syracuse, New York.  Plaintiff Liddle needed her front and rear rotors replaced.  This repair was done under the warranty.

48.     Four months later, on or about December 2006, Plaintiff brought the vehicle into the dealership complaining of continued squeaking emanating from her rear brakes.   The dealership did not find a problem at that time.

49.     In August, 2008 with only 15,000 miles on the vehicle, Plaintiff Liddle had to pay $436 to replace her rear brake rotors and pads as Hyundai refused to cover this repair under the warranty.

50.     Since that repair, Plaintiff Liddle has had a total of six (6) repairs over the course of owning her Sonata.  Liddle had her brakes repaired at 38,613 miles and was she was just forced to pay for another brake repair just 6,000 miles later.  None of these repairs were covered under the warranty.  Plaintiff's most recent repair occurred on April 7, 2015.  She had to have her rear rotors, pads and caliper replaced. Defendant's refusal to cover the repairs under warranty led Plaintiff to expend $534.59 for the rear brake repairs.  The post-sale denial of her warranty claims

13

amounted to deceptive conduct under the New York Deceptive Acts and Practices statute and occurred within three years of initiating this action.

**Plaintiff Pierskalla's Factual Allegations**

51.     In or about September, 2010, while a citizen of the State of Minnesota, Plaintiff Pierskalla leased a new 2009 Sonata vehicle from a Hyundai dealership located in Waite Park, Minnesota.  The vehicle was delivered to Plaintiff and/or put in service in or about September, 2010.

52.     Plaintiff Pierskalla first noticed a problem with her rear brakes in November, 2012 when she noticed a burning smell coming from the right rear brake.  Her vehicle had 24,000 miles. She brought her Sonata into the Hyundai dealer for service.  Dealer found debris built up in the rear brake shoes.  Plaintiff paid $40 for the cost of cleaning the brakes.

53.     In or about May, 2013, Plaintiff took her Sonata into the St. Cloud Hyundai dealership again.  The dealership was unable to verify the problem.  At that time, Plaintiff's vehicle was still covered under the warranty.

54.     Plaintiff Pierskalla brought her vehicle back into the Hyundai dealership for inspection of the brakes in December, 2014.  The dealer found that the brakes were "misadjusted" and that the rear brake caliper was seized and it needed to be replaced along with the brake pads.

55.     Plaintiff requested that Defendant, through the dealer, cover the repair or replacement under 5 Year/60k Warranty as the vehicle was just out of warranty and this brake issue occurred while Plaintiff's vehicle was under warranty, which request Defendant wrongly refused.

56.     The post-sale denial of Plaintiff Pierskalla's warranty claim amounted to deceptive conduct under the Minnesota Consumer Fraud Act and occurred within six years of initiating this action. As a result, Plaintiff had the brake pads and rotors replaced at her expense and paid $448.37.

**Plaintiff McCormick's Factual Allegations**

57.     In or about March, 2012, while a citizen of the State of Pennsylvania, Plaintiff McCormick purchased a used Sonata vehicle from a Hyundai dealership located in Burlington, New Jersey.  The vehicle was received all of its warranty and non-warranty service at the McCafferty Hyundai dealership located in Langhorne, Pennsylvania.

58.     In the summer of 2013, Plaintiff McCormick began noticing a grinding and a burning smell emanating from the rear brakes. Plaintiff was informed that the brake pads were sticking in the left rear caliper and that her vehicle required the replacement of the rear caliper and rotors.  Plaintiff contacted the Hyundai dealership to see if this repair would be covered under warranty.  The Defendant, through the dealership, denied warranty coverage.  Plaintiff McCaffrey purchased the rotors and brake pads herself and then paid an independent mechanic $180 to purchase and install the calipers, rotors and brake pads.

59.     In October, 2014, Plaintiff again heard a grinding coming from the rear brakes.  The Hyundai dealership advised that the rear caliper needed replacement again, that the repair was not covered under warranty.  Plaintiff paid $207.80 for this repair.  Plaintiff then contacted Hyundai Customer Service Center.

60.     The following week Plaintiff McCormick received a call from a supervisor at Hyundai Corporate She explained the on-going issues that she was having with the brakes. Initially Plaintiff was advised that "there isn't a lot that we can do".  Plaintiff then informed the supervisor

that there were many consumer complaints on the internet and that there was a pending class action case. Plaintiff was instructed to send her paperwork into Hyundai Corporate.  On October 30, 2014, Plaintiff was then issued a check in the amount of $317.50 as reimbursement for the current repair and a portion of her previous repair.

61.     Plaintiff McCormick was very concerned about the safety of her vehicle given the multiple repairs to her rear brakes.  Three months later, in January, 2015, Plaintiff McCormick brought the vehicle in to the dealership for an inspection.  Incredibly, the dealer advised that the front and rear rotors needed replacement.   Plaintiff took it to Meineke for a second opinion. The mechanic advised that Plaintiff's brakes were at 60% and that her caliper needed to be replaced. Plaintiff McCormick had them replace the brakes and rotors.  She then returned to the Hyundai dealership the following week to get the caliper replaced again. Plaintiff was refused warranty coverage and paid approximately $245.77 for this repair.

62.     Defendant's refusal to cover the repair under warranty led Plaintiff to expend $245.77 for the rear brake repairs.  The post-sale denial of her warranty claim amounted to deceptive conduct under the Pennsylvania's Unfair Trade Practices and Consumer Protection Law statute and occurred within two years of initiating this action.

**Defendant Hyundai's Conduct**

63.     Plaintiffs subsequently learned that their Sonatas, just like the other Class Vehicles, model years 2006 through 2010, had a continuing problem with their brake rotors, caliper and brake assemblies.  Plaintiffs allege that the problem with the 2006 vehicles' brakes first surfaced in 2005, when it became apparent that there was a manufacturing defect in the rotors and caliper assemblies.

16

64.     Hyundai, nevertheless, continued to represent to new purchasers and/or lessees of Sonatas, as it did with Plaintiffs, that the Sonatas, including their brake assemblies, were properly manufactured using proper materials and/or workmanship, in good working condition, and fit for their intended purpose.

65.     Defendant advertised, promoted and marketed the fitness, safety and warranty benefits of the Class Vehicles.  These advertisements were directed at the putative class, viewed by the Plaintiffs and influenced their decision-making.  Defendant's advertising, promoting and marketing of the fitness, safety and warranty benefits of the Class Vehicles was deceptive because of the fact that the known defect in the braking system was not disclosed.

66.     Hyundai, through its dealerships, agents, servants and employees, was put on actual and/or constructive notice of the defective brakes in the Class Vehicles since at least 2005.  Thus, when Plaintiffs subsequently purchased their Sonatas, Hyundai knew, or should have known, that the brake assemblies on these vehicles were defective.  In fact, Defendant created a written report which demonstrates its prior knowledge of the brake defect.  Hyundai, nevertheless, failed to disclose the existence and nature of said defects in any advertisements, agreements, publications, websites, owner manuals, warranty agreements or literature given to new purchasers of the vehicle, including Plaintiffs and members of the Class.  Hyundai also failed to provide owners of the vehicle with any written warnings or notices regarding the vehicle's defective brakes.  Further, Hyundai refused to cover the cost of replacing these defective brakes claiming that such costs were not covered by the Basic Warranty.

67.     Defendant's prior knowledge of the undisclosed defective brakes and premature corrosion issues are clear.  As evidence of this, there is a service and maintenance chart buried in

the Owner's Manual which includes a checkmark in a box for the brake pads/calipers/rotors to be inspected every 15,000, "and after inspection, clean, adjust repair or replace if necessary" (which the consumer would only see after purchase of the vehicle). Defendant has also referred to this as "pre-winterization". However, it is concealed by Defendant that this "maintenance" comes at an undisclosed cost to the consumer of $200 for each time the Dealer "pre-winterizes" the brakes. If the consumer fails to do this scheduled maintenance and pay the previously undisclosed cost of $200 for "pre-winterizing". , then Defendant deceptively utilizes this pretext to "deny" warranty coverage during the warranty period for the brakes despite the fact that Defendant was already aware that the brakes in the Sonata are defective, subject to corrosion and that Hyundai is not covering any brake repair during the warranty period or beyond whether the scheduled maintenance is done or not.

68.     Further, even though Hyundai had actual knowledge of the defect in the brake assemblies (which hold the brake pads) the calipers and rotors in the Class Vehicles, it did not correct the defect and concealed the existence of the defect.

69.     While rotors may occasionally need to be turned to restore their braking surface, the rotors, calipers and brake assembly do not normally wear out and require complete replacement during the normal life of the vehicle used under 100,000 miles. In fact, while Hyundai's Service and Maintenance Guide call for the periodic inspection of the braking system, it does not suggest or require the scheduled replacement of any rotors or calipers in the braking system within the first 120,000 miles.

70.     At least one of the material and/or workmanship defects existing within the rotors, calipers and brake assembly in the Class Vehicles, is that the rotors are too thin and/or varying in

thickness and not in conformance with customary thickness and uniformity, which would otherwise be standard in the industry.  In addition, the calipers and brake assemblies contain a material and/or workmanship defect inasmuch as they do not remain rust-free and have a tendency to stick and therefore fail. This results in continuous contact of other parts--such as the rotors with the brake pads--which results in premature wear. Further, the brake assembly is inadequately manufactured and does not remain rust free.  All of the above are contrary to what proper materials and workmanship would have required.

71.     Defendant had the benefit of its pre-release testing, early service maintenance analysis and reports and data; knowledge and examination of the specifications for the various brake part (e.g., rotors, hubs and caliper assemblies); knowledge of materials; and knowledge through customer complaints to Hyundai directly and through online consumer websites.  Yet, the Defendant chose to continue to produce Sonata vehicles with defective rotors, caliper assemblies and brake assemblies since it was less expensive to do so.

72.     Various complaints filed by purchasers of the Sonata vehicles with various internet bulletin board-type websites demonstrate the potential dangerous nature of the defective condition. Defendant was aware of and had knowledge of these complaints and, therefore knew that the problem was a widespread and common defect and not the result of mere isolated incidents unrelated to the defect.

(a)     For example, On June 9, 2006, one consumer [Case No. 10159377] noted on www.mycarstats.com that "The brakes on my 'new' Hyundai Sonata is the problem.  The car will stop but with my foot on the brake pedal—the pedal will go to the floor.  Took the car to the

agency [sic] 5/13/06 and was told that was 'normal' for this car!!!  Duh!!!  Bought the car 5/02/06.
Have less than 1000 miles on it now. NM"

(b)     On April 21, 2008, another consumer noted on www.mycarstats.com, after
noting that he had to replace the brake assemblies at 40,000 miles and again at 72,000, that "[A]
particular mechanic, at a well known facility informed me that Hyundais [sic] are notorious for
wearing out brakes and they see this continued problem.  They also informed me that the Hyundai
dealer is quite aware of this issue."

(c)     On January 16, 2009, a consumer noted on www.mycarstats.com "I have
2007 Hyundai Sonata with 21,000 miles.  Brake pads were sticking causing hazardous driving and
braking.  The same problem occurred 3 times within 46,000 miles on my previous 2003 Hyundai
Accent.  I believe the brakes are improperly engineered with metals which corrode prematurely in
salt/snow."

(d)     On March 1, 2009, a consumer noted on www.mycarstats.com "22,000
miles on my Hyundai Sonata and the left rear wheel brake caliper stuck.  The stuck caliper left the
pad against the rotor.  Both the left rear wheel rotor and both rear brake pads had to be replaced.
The Hyundai dealership would not cover the repair under warranty and I had to pay almost $400
dollars to get it fixed.  I have never had a car with only 22,000 miles have a brake problem like
this."

(e)     On May 3, 2009, a consumer noted on www.mycarstats.com that his Sonata
required a major brake repair and stated "[k]nowing the heat was from the pads not releasing, I
refused the work and investigated myself.  Like other complaints here, I found that the pads are
too tight in the calipers, and also are corroded.  The heat issue only makes them fit tighter.  The

pad guides needed to be lightly filed and coated with anti-seize to fit and slide properly.  I googled this and scanned the Hyundai forums, and the internet is littered with Sonatas and other Hyundais with the exact same problem.  Hyundai will not address the issue, preferring to charge customers for new brakes and regular brake "Lube" service.  Hyundai consumer affairs also did absolutely nothing about this.  This is a safety issue and a material and/or workmanship defect.  Sooner or later this problem will cause an overheated wheel/tire to fail, or a wheel to lock up under slippery boards, and someone will be out more than just repair money."

      (f)     On September 16, 2014, a consumer noted on [www.aboutautomobile.com](www.aboutautomobile.com) that "I had my car towed to the dealership in january after my brakes failed on the way to work. By putting the brake pedal all the way to the floor I was able to stop the car. The dealership told me it was the right rear caliper that had seized. They repaired that caliper, but I expressed my concern for the left rear caliper being damaged and was told that it was "fine." well a few months later, my left rear caliper has seized and I had it towed to the dealership. They tell me that it is no longer under warranty. I told them that this is a known issue and that I expressed my concern about the left rear caliper in january. They tell me that it is up to hyundai to decide whether it will be covered or not. This is ridiculous! peoples' lives are at risk!"

      (g)     On April 1, 2013, a consumer noted on [www.about automobiles.com](www.about automobiles.com) that "In april 2013 my rear brakes had to be replaced for inspection. The right rear side was down to nothing, it was rubbing bare metal to bare metal, brakes again rotors. The left side was also more worn than it should have been, but not as bad as the right side. In july 2013 the same issue happened again. The right rear side was rubbing metal to metal, brakes against rotor. The left side was fine. The brakes parts (caliper) were working appropriately. In october 2013 the right rear brakes began

squealing and approximately 2 weeks after the squealing began it started making the same grinding

noise as it did the previous times and the brakes had to be replaced again. This time, the caliper

also had to be replaced. My rear brakes have had to be replaced three times in 8 months. "

        (h)     On November 6, 2014, a consumer noted on www.aboutautomobile.com

that "I have owned this car for the past 50000 miles and have replaced the left rear caliper 4 times,

right rear caliper 2 times. The rear calipers have a problem of sticking cause the rear brake pads to

prematurely wear out. It appears that the protective rubber boot will pinch on the caliper and

prevent it from releasing, hyundai states this is normal. I have gone through also 4 sets of pads in

the rear, and none in the front. As usual the car dealer admits to nothing, and will do nothing to

help."

        (i)     On July 11, 2009, a consumer noted on www.edmunds.com "I own a Sonata

that is now on its second set of rear brake pads at 32,000 miles.  Having owned cars with mixed

city and highway driving now for 35 years, I don't recall having replaced brakes much ever before

60,000 miles much less than rear brakes on a front wheel drive twice in 30,000 miles, it is just

shocking.  There seems to be wide spread [sic] agreement that this should not be happening but

not much [recourse]."

        (j)     On July 20, 2009, a consumer noted on www.edmunds.com "My 2007

Sonata had 26K miles, and I just paid the Hyundai dealer to replace the rear pads and re-surface

the rotors.  The service manager explained how he believed the rear brakes wore out so soon:

Corrosion on the caliper guide prevented the caliper from returning to a 'rest' position once the

brake pedal had been released.  As a result, the calipers were applied continuously, resulting in

premature wear of the caliper pads.  Hyundai subsequently denied my request to cover this repair

under their warranty.  I am by no means an expert when it comes to cars, but after seeing several similar stories on this discussion page, it seems to me the premature wear of rear brake pads is a SYMPTOM of the real problem: the caliper guides are susceptible to rust. . .”

       (k)     On July 17, 2013, a consumer noted on www.aboutautomobile.com “Heard squealing and howling from the rear driver side. Took to dealership and was told that the brakes hung up and I needed to replace brakes and rotor ($189.00). I was told that this is a maintenance issue and nothing was covered under warranty. I purchased the items and when they were going to be replaced we discovered the dust boot was pulled out of the caliper (which would have been covered under warranty) I contacted the dealer and was told that every 7000 miles the calipers would need rebuilt. I've been driving and grew up around garages and never heard of such a thing!”

       (l)     On March 22, 2010, a consumer noted on www.aboutautomobile.com “My 2007 sonata [sic] had only 18,000 miles on it when the rear brakes kept squeaking & locking up. This wore the pads down and they had to be replaced.  I was told this happened because the sliders were rustin [sic] up and stopped working.”

       (m)     On August 13, 2010, a consumer on www.aboutautomobile.com noted “Intermittent rear brake noise on 2007 hyundai sonata for over 1 year.  Twice inspected at dealers shop, no problem found and all disc brake pads within specs.  I noted recently at 42,000 miles that the passenger side steel rear wheel was getting extremely hot due to rear brakes overheating.  My dealer stated that pass.  Side rear brake pad had worn down almost completely due to ‘brake pad slides sticking on calipers.’  New set for rear brakes were installed at cost of 240.00.  My dealer and hyundai corporation stated that repair work would not be covered under Warranty!  I feel this

is a safety issue not only because of rear brake pad premature failure but the unknown effect on the rear wheel bearings due to overheating of brakes/wheel."

73.     All major vehicle manufacturers meticulously monitor field information, websites including the complaint website maintained by the National Highway Transportation Safety Administration's Office of Defects Investigation (NHTSA-ODI), and other internet bulletin boards and sites relating to safety and quality of its business, brands and vehicles, and Hyundai would be grossly negligent and the odd outlier if it failed to do the same as its competitors.  Thus, Defendant monitors web activity relating to its business, brand and vehicles and was aware of these and similar internet postings regarding the defect in the Class Vehicles.

74.     Defendant also had knowledge of the defect through customer complaints made through the online consumer complaint website maintained by the National Highway Transportation Safety Administration's Office of Defects Investigation (NHTSA-ODI), found at http://www-odi.nhtsa.dot.gov/owners/.  The NHTSA-ODI website allows consumers to "identify and report problems you might be having with your vehicle, tires, equipment or car seats. **If you think you have a problem, we want you to tell us about it.**" https://wwwodi.nhtsa.dot.gov/ivoq/ (accessed on October 25, 2013) (emphasis in the original).  The Office of Defects Investigation, reviews and analyzes complaints to determine whether to issue recalls.  *Id.*

75.As of June, 2015, the NHTSA-ODI database indicated that there were over 270 complaints filed by consumers relating to the rear brakes in the 2006-2010 Sonata vehicles at issue in this case.  *See* Exhibit A, which consist of true and accurate .pdf copies of complaints maintained on the NHTSA-ODI database.  These complaints include the following:

> The following is an email that I sent to the service department I recently went to
> for recurring brake/caliper issues on this vehicle.  As you know I was in yesterday
> (Buekle Hyundai White Bear Lake, MN @ 8:48 am invoice 183543) with my
> 2008 Hyundai Sonata with left rear brake issues.  It seemed like the left rear

caliper may be sticking.  As I explained when the car was dropped off yesterday (2/5/13), we had just replaced both rear brake pads and rotors and the car only had 29,975 miles when the brakes and rotors were replaced on 12/22/2012.  I bought in the previous brake pads and rotor for your inspection from the rear drivers side of the vehicle.  The side that is currently having issues.  It clearly showed the brake pads were completely gone and the rotor was scraped and ruined.  This was shown to the service advisor helping me, Brian Coyle.  I have attached, just a few out of several, websites for your review to show this is a known problem that has received many consumer complaints.
HTTP://WWW.ARFC.ORG/COMPLAINTS/2008/HYUNDAI/SONATA/SERVICE_BRAKES_ HYDRAULIC/PROBLEM.ASPX
HTTP://WWW.SONATABRAKEDEFECT.COM/INDEX.PHP/SONATADEFECT/SONATACO MMENTS.HTML HTTP://WWW.CARPROBLEMZOO.COM/HYUNDAI/SONATA/BRAKE-DISC-CALIPER-PROBLEMS.PHP
HTTP://WWW.ABOUTAUTOMOBILE.COM/COMPLAINT/2008/HYUNDAI/SONATA/HYD RAULIC+BRAKE
As you can see, this issue, definitely, needs to be addressed by Hyundai as well the Hyundai Certified Service Department locations.  The consumer should not be responsible for repair and payment of a known manufacturing defect, one time, let alone over and over again for the same issue.  Not to mention, brake issues like these and to this extent of needed repair at such low mileage.  I really should not have been charged for a repair of for lubrication to brakes, etc, when the same thing was done to these brakes a few weeks ago.  *TR

> *        *        *

Rear brakes on my Sonata started grinding at 25000 miles. Contacted Hyundai headquarters by email and they stated the brakes were out of warranty and no recall on this problem. I was informed by them to take it to the Hyundai dealer. Since this should not happen at this mileage I had taken it to my mechanic who is state certified. Hyundai needs to do a recall on this safety problem. I have kept the email response that Hyundai headquarters sent to me. *tr

*See id.* (all capitals in the original).

75.      For the sake of the Court's convenience, Plaintiffs' counsel have highlighted a selection of the most relevant complaints in Exhibit B.

76.      Relatedly, Hyundai has recently issued a recall for its 2006-2010 Sonatas for a different corrosion problem (which includes the model year Class Vehicles in this action).  The recall acknowledges that the vehicle's rear suspension crossmember may corrode prematurely,

fail, and allow the rear suspension control arms to which it attaches to completely lose directional control of the rear tires.  In its notification to the NHTSA, Hyundai states that it "conducted a corrosion survey of customer Sonata…vehicles at Hyundai dealerships in Canada and the US." Defendant's recall campaign is being conducted in all "salt belt states," which includes New York. These NHTSA recall filings lend support for the plausibility of Plaintiffs' allegations that rear undercarriage components in the Class Vehicles, including the brakes components at issue here, are subject to premature corrosion problems.

77.     That the 2006 – 2010 Sonata vehicles were experiencing significant problems with calipers, rotors and brake assembly was known to Defendant.  Accordingly, the premature wearing, grinding and/or premature failure of the brakes is caused by a product defect.  It was also known to the Defendant that this defect caused a potentially dangerous driving condition if not corrected when experienced by the vehicle owner.

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of a class consisting of: all citizens of the United States who purchased or leased a Class Vehicle.

79.     Excluded from the class are Defendants, officers and directors of the company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest;

80.     Plaintiffs assert that the Class is defined as follows:  All Class members who have experienced some or all of the aforementioned defect and have expended sums to repair the defect when, in fact, Defendant is legally responsible to pay for the same and Class members who will

have or may have the defective rotor problem manifest in the future for which Defendant, though legally responsible, will not cover or pay for.

81.     This action is brought and may properly proceed as a class action, pursuant to the provisions of F.R.C.P. 23.  Plaintiffs brings this action on behalf of themselves and all others similarly situated.  Proposed F.R.C.P 23(b)(3) Class is defined as follows:

A.   All persons in the United States who purchased and/or leased a 2006 to 2010 Sonata automobile.  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this Class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased, for resale, from Defendants, or any entity related to or affiliated with Hyundai, a new Sonata model year 2006 to 2010, or any person who has an action for damages for personal injury or death or property damage against Defendant.

B.   In the alternative, the following sub-classes:

**A New York Sub-Class:**

All persons who are citizens of the State of New York who purchased and/or leased a 2006 to 2010 Sonata automobile.  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this Class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased, for resale, from Defendants, or any entity related to or affiliated with Hyundai, a new Sonata model year 2006 to 2010, or any person who has an action for damages for personal injury or death or property damage against Defendant.

**A Massachusetts Sub-Class:**

27

All persons who are citizens of the State of Massachusetts who purchased and/or leased a 2006 to 2010 Sonata automobile. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this Class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased, for resale, from Defendants, or any entity related to or affiliated with Hyundai, a new Sonata model year 2006 to 2010, or any person who has an action for damages for personal injury or death or property damage against Defendant.

**An Illinois Sub-Class:**

All persons who are citizens of the State of Illinois who purchased and/or leased a 2006 to 2010 Sonata automobile. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this Class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased, for resale, from Defendants, or any entity related to or affiliated with Hyundai, a new Sonata model year 2006 to 2010, or any person who has an action for damages for personal injury or death or property damage against Defendant.

**A Minnesota Sub-Class:**

All persons who are citizens of the State of Minnesota who purchased and/or leased a 2006 to 2010 Sonata automobile. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this Class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased, for resale, from Defendants, or any entity related to or affiliated with Hyundai, a new Sonata model year 2006 to 2010, or

any person who has an action for damages for personal injury or death
or property damage against Defendant.

**A Pennsylvania Sub-Class:**

All persons who are citizens of the State of Pennsylvania who purchased
and/or leased a 2006 to 2010 Sonata automobile.  The term "persons"
includes individuals as well as profit and not-for-profit corporations,
partnerships, limited liability companies, limited liability partnerships,
joint ventures, sole proprietorships, associations, firm, trust and other
business and governmental entities.

Excluded from this Class are any persons or other entity related to or
affiliated with Defendants; any person, firm, trust, corporation, or other
entity who purchased, for resale, from Defendants, or any entity related
to or affiliated with Hyundai, a new Sonata model year 2006 to 2010, or
any person who has an action for damages for personal injury or death
or property damage against Defendant.

## NUMEROSITY

82.     The members of the Class are so numerous that joinder of all members is
impracticable.  The Class is made up of hundreds or thousands of members.  The precise number
of Class members can only be ascertained through discovery, which includes Defendant's sales,
service, maintenance and complaint records.  The disposition of their claims through a class action
will benefit both the parties and this Court.

## COMMON QUESTIONS OF LAW AND FACT

83.     There is a well-defined community of interest in the questions of law and fact
involved affecting the Plaintiffs and members of the Class.

84.     The questions of law and fact common to the Class, and in particular, the Damages
Subclass, predominate over questions which may affect individual members, and include the
following:

(a)     Whether the rotors, calipers and brake assembly used by Defendant in its

Class Vehicles, model years 2006-2010 were defective in that the caliper pin and/or guide was defective, and/or rotors were too thin and/or contained such excessive variation in thickness as to fail to conform to industry standards or contained other substantial defect.

(b)    Whether Sonata vehicles possess the brake system defect or defects alleged;

(c)    Whether the brake system defect(s) constitute a breach of the implied warranty of merchantability and of express warranty;

(d)    Whether the calipers and/or rotors are included in the 60,000 mile/60 month express warranty (e.g., Basic Warranty);

(e)    Whether the Defendant violated New York's General Business Law § 349;

(f)    Whether the Defendant violated Illinois' Consumer Fraud and Deceptive Business Practice Act (IFCA) – 815 ILCS 505 et seq.);

(g)    Whether the Defendant violated Minnesota's Consumer Fraud Act (Minn.Stat. § 325F.69 et seq.)

(h)    Whether the Defendant violated Massachusetts General Law Annotated, Ch. 93A §1-11

(i)    Whether the Defendant violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1 *et seq.*)

(j)    Whether members of the Class are entitled to be notified and warned about the brake system defect and are entitled to the entry of final and injunctive relief compelling Defendant to issue a notification and warning to all class members concerning such a defect;

(k)    Whether Class members are entitled to actual damages and if so, the appropriate amount thereof;

(l)    Whether Defendant deliberately misrepresented or failed to disclose or concealed material facts to Plaintiffs and the Class members;

(m)    Whether Defendant gave an express warranty which was limited by time despite Defendant's knowledge that the braking defect would become apparent after the warranty period; and

(n)    Whether the durational limits of the Basic Warranty as applied to this significant defect are unconscionable and therefore unenforceable.

## TYPICALITY

85.     The claims and defenses of Plaintiffs, as the representative Plaintiffs, are typical of the claims and defenses of the class because Plaintiffs and the Class members all owned Class Vehicles with defective brake assemblies which were designed, manufactured and sold by Defendant.  Plaintiffs, like all class members, purchased their Sonata without having received any warning or notification from the Defendant of the brake defect.  Plaintiffs also qualify as typical of each subclass.

## ADEQUACY OF REPRESENTATION

86.     Plaintiffs, as the representative Plaintiffs, will fairly and adequately assert and protect the interests of the Class as:

> (a)     Plaintiffs have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and

> (b)     Plaintiffs have no conflict of interest that will interfere with the maintenance of this class action.

## PREDOMINANCE

87.     With respect to the Damages Subclass and/or Class, questions common to the class predominate over those which only affect individual owners.  This case involves one model car.  The braking system parts are interchangeable from one model year to the next.  The brakes are defective regardless of who was driving them or how they were being driven.  Liability will primarily be predicated upon the jury's evaluation of the materials and/or workmanship of the

31

brake assembly, the defective components and Defendant's awareness of the problem and its effort to resolve it.

## SUPERIORITY

88.     A class action provides a fair and efficient method for the adjudication of controversy for the following reasons:

(a)     The common questions of law and fact set forth above predominate over any questions affecting only individual Class members;

(b)     The Class is so numerous as to make joinder impracticable.  The Class, however, is not so numerous as to create manageability problems.  There are no unusual legal or factual issues which would create manageability problems;

(c)     Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

(d)     The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover; and

(e)     A class action would be superior to and more efficient than adjudicating thousands of individual lawsuits.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

89.     Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

90.     Defendant engaged in a massive, well-documented campaign to portray Hyundai's warranty as the "Best Warranty in America".  In addition, the warranty language which did not exclude rotors or calipers or require "pre-winterizing" at a cost to the owner was misleading because Defendant, contrary to the express warranty, (i) intended to exclude rotors and calipers, and (ii) intended to require "pre-winterizing" and to charge owners for it.

91.     Defendants are estopped from relying upon any statutes of limitation by reason of their fraudulent misrepresentation, suppression and concealment of material facts, and any applicable statutes of limitation are tolled by such conduct.

### FIRST CAUSE OF ACTION
**(Deceptive Trade Practices)**
**(Violation of New York General Business Law Section§349 Deceptive Acts and Practices)**
**(Brought on behalf of New York Sub-Class)**

92.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

93.     Plaintiffs Miller and Liddle assert this cause of action on behalf of themselves and the New York Sub-Class.

94.     Defendant's practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiffs Miller and Liddle the New York Sub-Class Members to purchase and/or lease the above-mentioned Vehicle with defective brake systems.

95.     Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the manufacturing and materials and/or workmanship defects.

96.     Defendant's practices, acts, policies and course of conduct are actionable in that:

33

(a)     Defendant actively and knowingly misrepresented to Plaintiffs Miller and Liddle and the New York Sub-Class Members at the time of purchase or lease  that the Class Vehicles, including the manufacturing and materials and/or workmanship defects of the brake system of said vehicles, did not contain a material defect, were in good working order, not defective and merchantable;

(b)     Defendant failed to give adequate warnings and notices regarding the use, defects and problems with the brake system defect to consumers who purchased or leased said Class Vehicles, despite the fact that Defendant possessed prior knowledge of the inherent defects to the Class Vehicles' braking systems;

(c)     Defendant failed to disclose to Plaintiffs Miller and Liddle the New York Sub-Class Members, either through warnings or recall notices, and/or actively concealed the fact from them that the brake system was defective, despite the fact that it learned of such defects in at least as early as 2005-2006.

(d)     Defendant's actions and/or omissions caused Plaintiffs Miller and Liddle and the New York Sub-Class Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the brake system and/or brake system components, despite the fact Defendant had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce.  The post-sale denial of Plaintiffs' warranty claim amounted to deceptive conduct under the New York Deceptive Acts and Practices statute and occurred within three years of initiating this action.

(e)     Defendant's marketing, advertising and promoting of its vehicles was deceptive because it concealed and failed to reveal the known defect in the vehicles.

(f)     Defendant occasionally, through its agents and representatives, has admitted to some Class Vehicles owners or lessees by its words and action, that the defect should be covered by its warranties and denied this to others.  Defendant thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

97.     Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendant has, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the brake system.

98.     In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

99.     Plaintiffs Miller and Liddle and members of the public were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose, including but not limited to, the representations about the vehicle's safety and warranty benefits.

100.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Miller and Liddle the New York Sub-Class Members have been damaged as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

101.    As a result, Plaintiff Miller and Liddle the New York Sub-Class Members seek restitution of all monies that Hyundai received as a result of selling the above-mentioned vehicles

35

to Plaintiff Miller and Liddle and the New York Sub-Class Members with inherent defects at the

time of purchase and/or lease, and by forcing Plaintiff Miller and Liddle and the New York Sub-

Class Members to expend substantial sums of money for the repair and/or replacement of the

vehicles defective brake system and/or component parts, despite the fact that Defendant had prior

knowledge of the Class Vehicles' defects.  Plaintiff Miller and Liddle are informed and believe

that the amount of said restitution is unknown at this time, but will seek relief to amend this

complaint at the time of trial, when the same has been ascertained.

102.    In addition, Plaintiffs Miller and Liddle and New York Sub-Class Members seek

punitive damages and reasonable attorneys' fees.  Plaintiffs also seek a declaratory judgment that

the defective brake systems of Class Members with respect to the premature corrosion of the

calipers, rotors and brake assemblies are covered under the Basic Warranty and must be repaired

at Defendant's expense and fall within the Basic Warranty.

## SECOND CAUSE OF ACTION
### (Illinois Consumer Fraud and Deceptive Business Practice Act)
### (IFCA) – 815 ILCS 505 *et seq*.)
### (Brought on behalf of Illinois Sub-Class)

103.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding

paragraphs of this Complaint as though set forth fully herein.

104.    Plaintiff Riordan assert this cause of action on behalf of herself and the Illinois Sub-

Class.

105.    Defendant's practices, acts, policies and course of conduct, as described above,

constitute unconscionable commercial practices, deception, fraud, false pretense, false promise,

misrepresentations, and/or the knowing concealment, suppression, or omission of material facts

with the intent that others, including Plaintiff Riordan and Illinois Sub-Class Members, rely upon

36

such concealment, suppression, omission in connection with the sale or advertisement of merchandise in violation of the Illinois Consumer Fraud and Deceptive Business Practice Act (ICFA) – 815 ILCS *et seq.* (the "Consumer Fraud Act") when purchasing and/or leasing the above-mentioned Vehicle with defective brake systems.

106.    Defendant intentionally concealed, suppressed and omitted to Plaintiff Riordan and the Illinois Sub-Class Members at the time of purchase or lease, that the Class Vehicles contained the manufacturing and materials and/or workmanship defects with the intent that others, including Plaintiff and class members, rely upon such concealment, suppression, failure to disclose or omission.

107.    Defendant knew and intentionally concealed, suppressed and omitted defects and problems with the brake system defect to consumers who purchased or leased said Class Vehicles, despite the fact that Defendant possessed prior knowledge of the defects to the Class Vehicles' braking systems.

108.    Defendant actively concealed to Plaintiff Riordan and the Illinois Sub-Class Members, the fact that the brake system was defective, despite the fact that it learned of such defects in at least as early as 2005-2006.   Defendant's post-sale denial of Plaintiff and Sub-Class Members' warranty claims amounted to deceptive conduct under the Illinois Consumer Fraud and Deceptive Business Practice Act statute and occurred within five years of initiating this action.

109.    Defendant's acts of commission and omission were done with knowledge and intent.

110.    Defendant's acts of commission and omission were material.

111.    Defendant's conduct was in the course of conduct involving trade or commerce.

112.    Defendant's acts of commission and omission caused Plaintiff Riordan and the Illinois Sub-Class Members to suffer ascertainable losses of money and property in that they were forced to expend sums of money at its dealerships and elsewhere to repair and/or replace the brake system and/or brake system components, despite the fact Defendant had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce.  Plaintiffs also seek a declaratory judgment that the defective brake systems of Class Members with respect to the premature corrosion of the calipers, rotors and brake assemblies are covered under the Basic Warranty and must be repaired at Defendant's expense and fall within the Basic Warranty.

**THIRD CAUSE OF ACTION**
**(Minnesota's Consumer Fraud Act)**
**(Minn.Stat. § 325F.69 *et seq.*)**
**(Brought on behalf of Minnesota Sub-Class)**

113.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

114.    Plaintiff Pierskalla asserts this cause of action on behalf of herself and the Minnesota Sub-Class.

115.    Defendant's practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiff Pierskalla and the Minnesota Sub-Class Members to purchase and/or lease the above-mentioned Vehicle with defective brake systems.

116.    Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the manufacturing and materials and/or workmanship defects.

117.    Defendant's practices, acts, policies and course of conduct are actionable in that:

(a)    Defendant actively and knowingly misrepresented to Plaintiff Pierskalla and the Minnesota Sub-Class Members at the time of purchase or lease  that the Class Vehicles,

38

including the manufacturing and materials and/or workmanship defects of the brake system of said vehicles, did not contain a material defect, were in good working order, not defective and merchantable;

(b)      Defendant failed to give adequate warnings and notices regarding the use, defects and problems with the brake system defect to consumers who purchased or leased said Class Vehicles, despite the fact that Defendant possessed prior knowledge of the inherent defects to the Class Vehicles' braking systems;

(c)      Defendant failed to disclose to Plaintiff  Pierskalla and the Minnesota Sub-Class Members, either through warnings or recall notices, and/or actively concealed the fact from them that the brake system was defective, despite the fact that it learned of such defects in at least as early as 2005-2006.

(d)      Defendant's actions and/or omissions caused Plaintiff Pierskalla and the Minnesota Sub-Class Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the brake system and/or brake system components, despite the fact Defendant had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce. Defendant's post-sale denial of Plaintiff Pierskalla's and the Minnesota Sub-Class Members' warranty claims amounted to deceptive conduct under the Minnesota Consumer Fraud Act and occurred within six years of initiating this action.

(e)      Defendant's marketing, advertising and promoting of its vehicles was deceptive because it concealed and failed to reveal the known defect in the vehicles.

(f)      Defendant occasionally, through its agents and representatives, has admitted to some Class Vehicles owners or lessees by its words and action, that the defect should

be covered by its warranties and denied this to others.  Defendant thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

118.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendant has, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the brake system.

119.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

120.    Plaintiffs and members of the public were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose, including but not limited to, the representations about the vehicle's safety and warranty benefits.

121.    There was a causal nexus between Defendant's deceptive and unconscionable commercial practices and Plaintiff Pierskalla and the Minnesota Sub-Class Members having been damaged as alleged herein, and therefore, Plaintiff is entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

122.    As a result, Plaintiff and the Minnesota Sub-Class Members seek restitution of all monies that Hyundai received as a result of selling the above-mentioned vehicles to Plaintiffs and the Class Members with inherent defects at the time of purchase and/or lease, and by forcing Plaintiffs and the Class Members to expend substantial sums of money for the repair and/or

40

replacement of the vehicles defective brake system and/or component parts, despite the fact that Defendant had prior knowledge of the Class Vehicles' defects.  Plaintiff is informed and believe that the amount of said restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial, when the same has been ascertained.

123.    In addition, Plaintiff Pierskalla and the Minnesota Sub-Class Members seek punitive damages and reasonable attorneys' fees.  Plaintiffs also seek a declaratory judgment that the defective brake systems of Class Members with respect to the premature corrosion of the calipers, rotors and brake assemblies are covered under the Basic Warranty and must be repaired at Defendant's expense and fall within the Basic Warranty.

### FOURTH CAUSE OF ACTION
**(Minnesota's Private Attorney General Statute)**
**(Minn.Stat. § 8.31 *et seq*.)**
**(Brought on behalf of Minnesota Subclass)**

124.    Plaintiffs hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

125.    Plaintiff Pierskalla and the Minnesota Sub-Class Members are consumers.

126.    Plaintiff Pierskalla and the class were injured by Defendant's sale of merchandise.

127.    Plaintiff Pierskalla and the Minnesota Sub-Class Members have been injured by Defendant's violation of the Minnesota Consumer Fraud Act.

128.    Plaintiff Pierskalla and the Minnesota Sub-Class Members have suffered damages with a causal nexus to Defendant's above-alleged misrepresentations and deceptive practices.

129.    This action will benefit the public interest and therefore meets the requirements of Minnesota's Private Attorney General Statute.

### FIFTH CAUSE OF ACTION

**(Massachusetts Consumer Protection Law)**
**(M.G.L.A 93A *et seq.*)**
**(Brought on behalf of Massachusetts Subclass)**

130. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

129.    Plaintiff Kotelly asserts this cause of action on behalf of himself and the Massachusetts Sub-Class Members.

130.    Defendant marketed and sold and/or leased the Class Vehicles within the State of Massachusetts to consumers with the knowledge that such vehicles have defective brake systems in violation of the Massachusetts Consumer Protection Act (MGLA 93A) (the "Consumer Protection Act") when purchasing and/or leasing the above-mentioned Vehicle with defective brake systems.

131.    Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the manufacturing and materials and/or workmanship defects.

132.    Defendant's practices, acts, policies and course of conduct are actionable in that:

(a)    Defendant actively and knowingly misrepresented to Plaintiff Kotelly and the Massachusetts Sub-Class Members at the time of purchase or lease  that the Class Vehicles, including the manufacturing and materials and/or workmanship defects of the brake system of said vehicles, did not contain a material defect, were in good working order, not defective and merchantable;

(b)    Defendant failed to give adequate warnings and notices regarding the use, defects and problems with the brake system defect to consumers who purchased or leased said Class

Vehicles, despite the fact that Defendant possessed prior knowledge of the inherent defects to the Class Vehicles' braking systems;

(c)     Defendant failed to disclose to Plaintiff Kotelly and the Massachusetts Sub-Class Members, either through warnings or recall notices, and/or actively concealed the fact from them that the brake system was defective, despite the fact that it learned of such defects in at least as early as 2005-2006. Defendant's post-sale denial of Plaintiff Kotelly and the Massachusetts Sub-Class Members' warranty claims amounted to deceptive conduct under the Massachusetts Consumer Protection Law and occurred within four years of initiating this action.

(d)     Defendant's actions and/or omissions caused Plaintiff Kotelly and the Massachusetts Sub-Class Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the brake system and/or brake system components, despite the fact Defendant had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce.

(e)     Defendant's marketing, advertising and promoting of its vehicles was deceptive because it concealed and failed to reveal the known defect in the vehicles.

(f)     Defendant occasionally, through its agents and representatives, has admitted to some Class Vehicles owners or lessees by its words and action, that the defect should be covered by its warranties and denied this to others.  Defendant thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

133.    Each and all of the aforementioned conduct is and was unfair, deceptive, false, fraudulent and constitutes an unfair commercial practice in that Defendant has, by the use of false

or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the brake system.

134.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

135.    Plaintiff Kotelly and members of the public were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose, including but not limited to, the representations about the vehicle's safety and warranty benefits.

136.    Such acts by Defendant are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle.  Said deceptive acts and practices aforementioned are material.  The sale and distribution in Massachusetts of the Class Vehicles was a consumer-oriented act and thereby falls under the Massachusetts Consumer Protection Act (MGLA 93A).

137.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Kotelly and the Massachusetts Sub-Class Members have been damaged as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

138.    As a result, Plaintiff Kotelly and the Massachusetts Sub-Class Members seek restitution of all monies that Hyundai received as a result of selling the above-mentioned vehicles to Plaintiff Kotelly and the Massachusetts Sub-Class Members with inherent defects at the time of purchase and/or lease, and by forcing Plaintiff Kotelly and the Massachusetts Sub-Class Members

to expend substantial sums of money for the repair and/or replacement of the vehicles defective brake system and/or component parts, despite the fact that Defendant had prior knowledge of the Class Vehicles' defects.  Plaintiff Kotelly is informed and believes that the amount of said restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial, when the same has been ascertained.

139.    In addition, Plaintiff Kotelly and the Massachusetts Sub-Class Members seek punitive damages and reasonable attorneys' fees.  Plaintiffs also seek a declaratory judgment that the defective brake systems of Class Members with respect to the premature corrosion of the calipers, rotors and brake assemblies are covered under the Basic Warranty and must be repaired at Defendant's expense and fall within the Basic Warranty.

### SIXTH CAUSE OF ACTION
**(Pennsylvania's Unfair Trade Practices and Consumer Protection Law)**
**(73 P.S. § 201-1 *et seq.*)**
**(Brought on behalf of Pennsylvania Sub-Class)**

140.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

141.    Plaintiff McCormick asserts this cause of action on behalf of himself and the Pennsylvania Sub-Class Members.

142.    Defendant's practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiff McCormick and the Pennsylvania Sub-Class Members to purchase and/or lease the above-mentioned Vehicle with defective brake systems.

143.    Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the manufacturing and materials and/or workmanship defects.

144.    Defendant's practices, acts, policies and course of conduct are actionable in that:

(a)       Defendant actively and knowingly misrepresented to Plaintiff McCormick and the Pennsylvania Sub-Class Members at the time of purchase or lease  that the Class Vehicles, including the manufacturing and materials and/or workmanship defects of the brake system of said vehicles, did not contain a material defect, were in good working order, not defective and merchantable;

(b)       Defendant failed to give adequate warnings and notices regarding the use, defects and problems with the brake system defect to consumers who purchased or leased said Class Vehicles, despite the fact that Defendant possessed prior knowledge of the inherent defects to the Class Vehicles' braking systems;

(c)       Defendant failed to disclose to Plaintiff McCormick and the Pennsylvania Sub-Class Members, either through warnings or recall notices, and/or actively concealed the fact from them that the brake system was defective, despite the fact that it learned of such defects in at least as early as 2005-2006. Defendant's post-sale denial of Plaintiff McCormick and the Pennsylvania Sub-Class Members' warranty claims amounted to deceptive conduct under the Pennsylvania's Unfair Trade Practices and Consumer Protection Law statute and occurred within two years of initiating this action.

(d)       Defendant's actions and/or omissions caused Plaintiff McCormick and the Pennsylvania Sub-Class Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the brake system and/or brake system components, despite the fact Defendant had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce.

(e)       Defendant's marketing, advertising and promoting of its vehicles was deceptive because it concealed and failed to reveal the known defect in the vehicles.

46

(f)     Defendant occasionally, through its agents and representatives, has admitted to some Class Vehicles owners or lessees by its words and action, that the defect should be covered by its warranties and denied this to others.  Defendant thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

145.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendant has, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the brake system.

146.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

147.    Plaintiffs and members of the public were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose, including but not limited to, the representations about the vehicle's safety and warranty benefits.

148.    There was a causal nexus between Defendant's deceptive and unconscionable commercial practices and Plaintiff McCormick and the Pennsylvania Sub-Class Members having been damaged as alleged herein, and therefore, Plaintiff is entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

149.    As a result, Plaintiff and the Pennsylvania Sub-Class Members seek restitution of all monies that Hyundai received as a result of selling the above-mentioned vehicles to Plaintiffs

and the Class Members with inherent defects at the time of purchase and/or lease, and by forcing Plaintiffs and the Class Members to expend substantial sums of money for the repair and/or replacement of the vehicles defective brake system and/or component parts, despite the fact that Defendant had prior knowledge of the Class Vehicles' defects.  Plaintiff is informed and believe that the amount of said restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial, when the same has been ascertained.

150.    In addition, Plaintiff McCormick and the Pennsylvania Sub-Class Members seek punitive damages and reasonable attorneys' fees.  The Declaratory Judgment Subclass Members seek a declaration that their defective brake systems must be repaired at Defendant's expense and fall within the Basic Warranty.

151.    Hyundai's brand, when first introduced to this country, was considered a low-end vehicle of relatively low quality.  To enhance the public's perception of the brand, Hyundai increased its warranty's durational period and introduced a campaign which sought to tout its warranty as the "Best Warranty in America".  The clear intention was, by demonstrating the most robust warranty available, consumers would be able to rely on the confidence the manufacturer placed in its vehicle's quality by standing squarely behind it.  Plaintiffs' relied on Hyundai's advertising and marketing when purchasing their class vehicles.

152.    Pursuant to the new vehicle "bumper to bumper" express warranty given to all purchasers of the Sonata, Hyundai is responsible for all repair and labor associated with the repair and service of defective parts.

153.    While the Basic Warranty covers the braking system (except for brake pads and linings as noted above) for 60 months or 60,000 miles, Hyundai has refused to cover these non-

excluded parts under "America's Best Warranty."  Rather, Hyundai claims the repairs and replacements resulting from the defect, are caused by normal wear and tear, thereby asserting that it has no obligation to remedy the problem when the symptoms materialize.  Further, if the defect has occurred after the warranty has expired, Hyundai has also claimed that the warranty on the entire braking system is inapplicable notwithstanding its prior knowledge of the defect. Consequently, Plaintiff McCormick relied, to her, upon the Defendant's Warranty to cover the repairs resulting from a defect when they purchased their Sonata vehicles.  As a result, Plaintiff McCormick and the Pennsylvania Sub-Class Members have been injured by being required to pay for the repairs of the defective brake assemblies themselves.

154.    Plaintiff McCormick alleges that Hyundai is responsible and liable for the costs of replacing the defective brake assemblies including reimbursement to them and members of the class for needed repairs already performed. Plaintiffs also seek a declaratory judgment that the defective brake systems of Class Members with respect to the premature corrosion of the calipers, rotors and brake assemblies are covered under and must be repaired at Defendant's expense and fall within the Basic Warranty.

## SEVENTH CAUSE OF ACTION
### (Breach of Express Warranty)
### (Brought on behalf of all Plaintiffs and All Sub-Class Members)

155.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

156.    Plaintiffs and the Class members have entered into certain written warranty agreements with Hyundai.  Pursuant to the Basic Warranty, Hyundai agreed it would provide Plaintiffs and the Class members with Sonata vehicles that were in proper working order and would

make all such replacements or repairs "found to be defective on material or workmanship" including with respect to the components of the braking systems (e.g., rotors, calipers, hubs, pads and assembly) for each vehicle.  Hyundai was therefore obligated to repair and/or service any defects or problems with the braking systems rising out of such defect, that Plaintiffs and the Class members experienced.  In exchange for these duties and obligations, Hyundai received payment of the purchase or lease price for the above-mentioned Sonata vehicles from Plaintiffs and the Class members.

157.    The Basic Warranty does not exclude the failure of the rotors, calipers or brake assembly if occurring within 60,000 miles/60 months.

158.    The Basic Warranty's express terms concerning specified components of the braking system was breached by Defendant with respect to Plaintiffs and all Class members who have not exceeded the 60,000 mile/60 months, because Defendant has refused to repair the premature brake failure, including the rotors and calipers, arising from the defect for Plaintiffs and Class members even when its symptoms appear within the 60,000miles/60 months. Defendant, despite its pre-existing knowledge of the defective components, wrongfully asserts that the premature brake failure is not covered under the warranty and/or is "normal wear and tear."

159.    In addition, Defendant is aware that the defect will continue to result in brake failure even after the warranty period had lapsed and such conduct on the part of Defendant is patently unconscionable, rendering the warranty limitations unenforceable, since Hyundai was aware of basic manufacturing and materials and/or workmanship defects in the system prior to selling or leasing the Class Vehicles and knew or should have known that the brakes would fail prematurely, and limited the express warranty, as such, in order to render such warranty unusable or illusory.

Moreover, Hyundai used its superior knowledge of the existing defect to offer a warranty which it knew or should have known would not cover the brake defects known to Hyundai to exist in the vehicles at the time of purchase or lease by Plaintiffs and members of the Class.  Hyundai breached the express warranty in providing Plaintiffs and the Class with Sonata vehicles with defective brake assemblies which is has refused to repair or replace.

160.    Plaintiffs gave notice to Defendant of their respective vehicle's defect through its Dealer and agent and through its customer service division, and gave Defendant a chance to repair the defect under the Basic Warranty, which Defendant refused to do. Defendant was also on notice of the defect by virtue of the NHTSA and other website complaints set forth herein, and the related case, *Marshall, et al. v. Hyundai Motor America,* Civil Action No. 12-cv-3072 (KMK) (S.D.N.Y.).

161.    Hyundai also violated the Basic Warranty and any implied covenant of good faith inherent in such agreement by selling Plaintiffs and the Class members vehicles with limited warranties under circumstances in which Hyundai knew or should have known that the defective braking systems would fail prematurely beyond the warranty period.

162.    As a result of the foregoing, Plaintiffs and the Damages Subclass members are entitled to compensatory damages for breach of express warranty in an amount to be proven at trial, and punitive damages because Defendant acted in a manner contrary to public purpose and with intent to exclude such defective brake systems.

163.    In addition, with respect to Class members whose repairs were beyond the warranty period, but failed within a reasonable period thereafter, the durational limits of the warranty are unconscionable pursuant to the Uniform Commercial Code Sec. 2-302(1) and (2), because, as alleged herein, Hyundai knew that the brake components were defective and concealed or

intentionally failed to reveal this material information to Class members in order to cause them to wait until after the warranty period to seek repairs.  In addition, the Defendant intentionally limited the warranty period so as to insure it would not be responsible for what it knew was a defect which otherwise would or should have been fixed by it under the warranty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

1.      For an order certifying the Class and/or subclasses, appointing Plaintiffs as representatives of the Class and each Subclass, and appointing the law firms representing Plaintiffs as counsel for the Class;

2.      For compensatory damages sustained by Plaintiffs and the Damages Subclass;

3.      For a declaration that the remedial work necessary to correct the defective brakes is covered by the Basic Warranty;

4.      For compensatory damages and/or restitution or refund of all funds acquired by Defendant from Plaintiffs as a result of Defendant's unlawful, unfair, fraudulent, deceptive and unconscionable practices described hereinabove in the Consumer Protection Statutes of New York, Massachusetts, Illinois, Minnesota and Pennsylvania including actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial;

5.      Trebling of damages suffered by the Class and/or appropriate subclass;

6.      Payment of costs and expenses of suit herein incurred;

7.      Both pre-and post-judgment interest on any amounts awarded;

8.      Payment of reasonable attorneys' fees and expert fees;

9.      Punitive damages where available; and

10.     Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: June 17, 2015                 **KANTROWITZ, GOLDHAMER**
                                     **& GRAIFMAN, P.C.**

                            By:   /s/ *Gary S. Graifman*
                                     Gary S. Graifman, Esq. (GSG-2276)

                            747 Chestnut Ridge Road
                            Chestnut Ridge, New York 10977
                            Tel:  (845) 356-2570


                            Gary E. Mason, Esq.
                            Nicholas A. Migliaccio, Esq.
                            **WHITFIELD BRYSON & MASON, LLP**
                            1625 Massachusetts Ave. NW, Suite 605
                            Washington, D.C. 20036
                            Tel:  (202) 429-2290


                            *Attorneys for Plaintiffs*