UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVE MILLER, RICHARD KOTELLY,
KATHLEEN RIORDAN, CHARLENE
LIDDLE, KRISTA PIERSKALLA, and
REBECCA MCCORMICK, on behalf of
themselves and all others similarly
situated,

                            Plaintiffs,

          v.

HYUNDIA MOTOR AMERICA,

                          Defendant.

No. 15-cv-4722 (TPG)

**OPINION**

---

       This lawsuit arises out of alleged factual misstatements and omissions made by defendant Hyundai Motor America ("HMA") about the braking system of HMA's Hyundai Sonata, model years 2006 through 2010 ("Class Vehicles"). Plaintiffs, a putative class of multi-state Class Vehicle owners and lessees, allege that HMA induced plaintiffs to purchase Class Vehicles by fraudulently misrepresenting the safety, quality, and warranty policies of its Class Vehicles. Plaintiffs also assert that HMA wrongfully denied warranty coverage for the brake parts HMA knew to be faulty.  HMA has now moved to dismiss the complaint per Federal Rule of Civil Procedure 12(b)(6) on the bases that plaintiffs' claims should be barred by applicable statutes of limitation, on state law grounds, or because the claims are inadequately pled.  For the reasons that follow, HMA's motion to dismiss is granted in part and denied in part.

**Background**

## I.   The Complaint

A. The Parties

HMA is a multinational automotive manufacturer headquartered in Seoul, South Korea. In the United States, HMA's principal place of business and headquarters is California, and it is registered to do business as a foreign corporation in New York.

Named plaintiffs are six individual citizens of five different states who purchased or leased a Class Vehicle between 2005 and 2012. Together, they have brought a class action complaint on behalf of themselves and other similarly situated individuals.[1] Plaintiffs Steve Miller and Charlene Liddle, of New York, and Richard Kotelly, of Massachusetts, purchased new Class Vehicles from HMA dealerships in their states of residency. Compl. ¶¶ 9–10, 12–13. Plaintiff Kathleen Riordan, of Illinois, leased her Class Vehicle from an HMA dealership in her home state. Id. ¶ 11. Plaintiff Rebecca McCormick, of Pennsylvania, purchased a used Class Vehicle from a New Jersey dealership that sells new and pre-owned HMA vehicles as well as vehicles by other car makers, id. ¶ 14. It is unclear whether Minnesota plaintiff Krista Pierskalla was a purchaser or lessor, as the complaint ambiguously alleges both that Pierskalla purchased a Class Vehicle *and* that she leased a Class Vehicle. Compare id. ¶ 13, with ¶ 51.

---

[1] Plaintiffs alternatively seek to be certified as a multi-state class comprised of multi-state owners and lessees. Compl. ¶ 1.

Having found that the named plaintiffs in this suit are diverse and that the claimed damages exceed $5 million, the Court finds that it has federal subject-matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 and the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). See Compl. ¶¶ 17–18.   Likewise, the Court exercises supplemental jurisdiction over plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367, as it finds that those state-law claims are part of the same case or controversy as the federal claims over which this Court already has jurisdiction. See 28 U.S.C. § 1367(a).

B. The Alleged Class Vehicle Defects

The complaint alleges that Class Vehicles had design, manufacturing, and/or workmanship defects that made the Class Vehicles unfit for normal use. Id. ¶ 63. Specifically, the complaint alleges that Class Vehicles' rotors, calipers, and brake assembly were defective. Id. ¶ 84(a). The caliper is the part of the brake assembly that houses the brake pads and pistons. Brake calipers squeeze the brake pads against the surface of the brake rotor to slow or stop the vehicle. The complaint alleges that the calipers prematurely corrode and stick to the brake pads when the brake pedal is applied. Id. ¶¶ 2, 30. It further alleges that the brake rotors were defective in that they were either too thin or varied in thickness in a way that deviated from the industry standard. Id. 84(a). Plaintiffs allege that, together, these defects caused the brake systems in the Class Vehicles to prematurely deteriorate by becoming severely worn and damaged. Id. ¶ 2.

3

Each named plaintiff brought his or her vehicle to the dealership and/or a repair shop after detecting a problem with his or her Class Vehicle's brake performance. Each plaintiff was told that his or her Class Vehicle had brake system problems that required repair or replacement of brake pads, rotors, calipers, and/or brake clamps. In each case, HMA refused to pay for the repair or replacement of brake parts, forcing plaintiffs to pay for repairs or replacements out-of-pocket. Several plaintiffs have had to pay for repeated repairs or replacements of brake parts. See id. ¶¶ 24–62.

C. Allegations Relating to HMA's Knowledge of the Alleged Defects

Plaintiffs allege that HMA knew or should have known of the Class Vehicles' defects since at least 2005. Id. ¶ 66.[2] They base this allegation on several sources of information: first, plaintiffs state that HMA "created a written report which demonstrates its prior knowledge of the brake defect." Id. The complaint does not provide additional detail about the report, and fails to include such vital facts as when the report was written, when HMA purportedly acquired the knowledge included in the report, or how the report purports to demonstrate HMA's prior knowledge about Class Vehicle defects.

---

[2] Plaintiffs assert for the first time in their memorandum of law in opposition to defendant's motion to dismiss that HMA's corporate parent, Hyundai Motor Company, was aware "that there was a significant issue with regard to certain brake components on the Sonata." ECF No. 17 at 1–2. New facts or arguments in opposition to a motion to dismiss are not considered part of the pleadings or allegations, Guo v. IBM 401(k) Plus Plan, 95 F. Supp. 3d 512, 526 (S.D.N.Y. 2015) (collecting cases), and this Court will not give weight to the new allegations made about Hyundai Motor Company at this time.

4

Second, as evidence of HMA's alleged prior knowledge of the defective brakes in Class Vehicles, plaintiffs point to the service and maintenance chart found in the Class Vehicle owner's manual. Id. ¶ 67. The manual apparently recommends that brake pads, calipers, and rotors be inspected every 15,000 miles, and cleaned, adjusted, repaired, or replaced, if necessary. Id. Such measures, termed "pre-winterization" measures, were to be at the owner's own expense. Plaintiffs complain that the contents of the manual constituted a hidden exclusion that buyers would only discover after purchasing the Class Vehicle. Plaintiffs allege that HMA should have disclosed this scheduled, pre-winterization maintenance to prospective buyers prior to sale. Plaintiffs also assert that HMA used these pre-winterization requirements as pretext to deny Plaintiffs' warranty coverage for brake parts, and that their inclusion in the manual denotes HMA's prior knowledge and intent to sidestep its warranty obligations. Id.

Third, plaintiffs assert that HMA had the benefit of "pre-release testing, early service maintenance analysis and reports and data; knowledge and examination of the specifications for the various brake part[s]." Id. ¶ 71. Plaintiffs nowhere list what the pre-release testing, early service maintenance analysis, or reports and data showed or tended to show about the brake problems at issue in the complaint.

Fourth, plaintiffs argue that HMA's knowledge also came from "consumer complaints made directly to Hyundai and through online consumer websites." Id. Plaintiffs then list examples of consumer complaints about the brake systems

5

of the Class Vehicles.  Id. ¶¶ 72–74.  The earliest consumer complaint example is dated June 9, 2006.  The other complaints are from 2009, 2010, 2013, and 2014.  Id. ¶ 72.

Fifth and finally, plaintiffs point to a recent, unrelated vehicle recall as evidence of HMA's knowledge.  According to the complaint, HMA issued a recall for its 2006 through 2010 Sonatas for a different problem than the one alleged in this complaint.  Id. ¶ 76.  The complaint does not make clear whether the recall related to the brake system or to some other part of the vehicle.

Plaintiffs assert that these sources, taken together, demonstrate that HMA knew of material defects in the Class Vehicles' brake systems before plaintiffs purchased or leased their vehicles.

D. Alleged Representations and Omissions

Plaintiffs separately allege that HMA fraudulently misrepresented and omitted material facts relating to the quality and safety of Class Vehicles to encourage plaintiffs' reliance on those statements and to induce plaintiffs to purchase their Class Vehicles.  HMA communicated the alleged misrepresentations and omissions in several ways.  First, plaintiffs argue that HMA represented to Class Vehicle purchasers and lessees that the Class Vehicle was properly manufactured, in good working condition, and was fit for its intended purpose.  Id. ¶ 64.  Second, plaintiffs contend that HMA knowingly misled plaintiffs when HMA marketed, promoted, and advertised the Class Vehicle's fitness and safety.  Id. ¶ 65.  Third, plaintiffs state that, despite having

6

prior knowledge about the Class Vehicle's alleged defects, HMA failed to disclose the existence and nature of those defects. Id. ¶ 66.

Plaintiffs assert that HMA's misrepresentations and omissions rise to the level of consumer fraud under Massachusetts, New York, Illinois, Minnesota, and Pennsylvania laws. See id. ¶¶ 92–154.

### E. Allegations About HMA's Express Warranty

The complaint alleges that HMA promised that purchasers of new Class Vehicles would be protected by HMA's "bumper to bumper" express warranty ("Warranty"). The Warranty provided that HMA was responsible for repair and labor for defective, covered car parts during the first 60,000 miles driven or the first five years of ownership, whichever came first. Id. ¶ 5.

The Warranty specifically excluded certain brake parts from coverage, including brake pads and brake linings. Id. However, the Warranty was silent as to coverage of the brake parts that are alleged to be defective in Class Vehicles, including brake rotors, calipers, and clamps. Id. Plaintiffs suggest that this silence denotes coverage under the Warranty.

Count VII of the complaint purports to state a cause of action for breach of warranty on behalf of all named plaintiffs and all sub-class members. But it is not clear that all named plaintiffs are eligible under the terms of the Warranty. The complaint explicitly states that HMA's Warranty applied to newly purchased Class Vehicles, id. ¶ 152, but nothing in the complaint indicates that the Warranty applied to leased and/or pre-owned Class Vehicles, see id. ¶¶ 5, 152.

7

Plaintiffs Riordan, McCormick, and Pierskalla did not purchase new Class Vehicles. Rather, Riordan leased her Class Vehicle, id. ¶ 11, and McCormick purchased her Class Vehicle as a used car, id. ¶ 14. The Court is unable to determine whether Pierskalla either purchased or leased her Class Vehicle, as the complaint alleges both. Compare id. ¶ 13, with ¶ 51. Accordingly, Riordan, McCormick, and Pierskalla have not pled facts that plausibly allege breaches of warranty, their claims for breach of warranty are dismissed.

Miller, Liddle, and Kotelly purchased new Class Vehicles. Therefore, they are eligible to make breach of warranty claims. Those plaintiffs allege that HMA wrongfully denied them Warranty coverage for eligible repairs and replacements for which plaintiffs paid out-of-pocket. Id. ¶¶ 24–62, 155–63.

F. Related Case

The present case is related to Marshall v. Hyundai Motor Am., No. 12-cv-3072 (S.D.N.Y.) ("Marshall"), a separate matter also pending before this Court. Marshall involves a putative class of Hyundai Sonata purchasers whose vehicles are alleged to have defective rotors, calipers, and brake assemblies. See Marshall Am. Compl., ECF No. 24. The Marshall action is limited to plaintiffs who are residents of the state of New York. Id. No plaintiff in the instant case alleges that he or she is, or ever was, a putative class member in the Marshall action.

II.    **Procedural History**

Plaintiffs commenced this action by filing a complaint on June 18, 2015. The complaint pleads seven causes of action premised on allegations that HMA engaged in unfair, deceptive, false, and fraudulent conduct in violation of New

8

York law, N.Y. Gen. Bus. Law § 349, Illinois law, 815 ILCS 505 et seq., Minnesota law, Minn. Stat. § 325F.69 et seq., as implemented by Minn. Stat. § 8.31 et seq., Massachusetts law, Mass. Gen. L. Ann. Ch. 93A § 1-11, and Pennsylvania law, 73 P.S. § 201-1 et seq. Plaintiffs also allege that HMA breached its Warranty. See Compl. ¶¶ 92–163.

HMA moved to dismiss the complaint on January 15, 2016. ECF Nos. 13–14. HMA's motion became fully briefed on March 25, 2016, ECF No. 20, and the case was reassigned to the undersigned judge's chambers on May 13, 2016.

## Discussion

### I.  Legal Standard

When facing a motion to dismiss, a court must take as true all well-pled factual allegations made in the complaint and draw all reasonable inferences in plaintiffs' favor. See Rutuolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). A complaint should be dismissed only if it fails to contain sufficient allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The Second Circuit has developed two guiding principles for district courts' assessment of plausibility. "First, although 'a Court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679). Thus, "[w]hen there are well-pleaded factual allegations, a Court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679.

## II.   Analysis

Plaintiffs have asserted seven causes of action against HMA: one breach of warranty and six violations of New York, Massachusetts, Illinois, Minnesota, and Pennsylvania consumer protection laws.   HMA argues in its motion to dismiss that plaintiffs' claims suffer from fatal defects that requires the Court to dismiss plaintiffs' complaint.  The Court will address HMA's arguments in turn.

### A.  Statutes of Limitation

A court may consider a statute of limitations defense on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  See, e.g., Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 425–26 (2d Cir. 2008).  The statute of limitations is an affirmative defense.  The defendant therefore bears the burden of proof to show that a plaintiff's claim is untimely.  Bano v. Union Carbide Corp., 361 F.3d 696, 710 (2d Cir. 2004).  Because the burden of asserting affirmative defenses lies with the defendant, "[t]he pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007).  Accordingly, dismissal based on the statute of limitations is proper only

10

if it is clear that the claim is untimely on the face of the complaint.  <u>Harris v. City of New York</u>, 186 F.3d 243, 250 (2d Cir. 1999).  In other words, for a court to dismiss a complaint based on the statute of limitations, the plaintiff must "plead[] itself out of Court."  <u>In re marchFIRST Inc.</u>, 589 F.3d 901, 904–05 (7th Cir. 2009); <u>see also</u> <u>Harris</u>, 186 F.3d at 250.  If the defendant demonstrates that the claim is untimely, the burden shifts to the plaintiff to show that the claim falls within an exception to the time bar.  <u>See</u> <u>In re U.S. Lines, Inc.</u>, No. 04-cv-6614, 2006 WL 1559237, at *5 (S.D.N.Y. June 7, 2006).

### 1.   *Massachusetts Consumer Protection Act Claim*

The Massachusetts Consumer Protection Act ("MCPA") provides, in relevant part, that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Mass. Gen. Laws ch. 93A, § 2(a).  Plaintiff Richard Kotelly alleges that HMA violated the MCPA when it knowingly misrepresented that the brake systems of its Class Vehicles were free of manufacturing, materials, and workmanship defects at the time those Class Vehicles were marketed, leased, and/or sold in Massachusetts.  Taking the facts as plaintiffs state them, HMA failed to disclose—either through warnings or recall notices—or actively concealed the brake system defects, and then refused to honor its Warranty following customers' purchase of the Class Vehicles.  Compl. ¶¶ 131–37.

There is a four-year statute of limitations for claims brought under the MCPA.  <u>See</u> MCPA § 5A.  The statute of limitations begins when the claim accrues.  Under Massachusetts law, an MCPA claim grounded in fraud does not

begin to accrue until the plaintiff knew or reasonably should have known of the deceptive conduct. Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006). Plaintiff need not know the full extent of his injuries at the time for the claim to accrue, so long as the events or facts were sufficient to alert the plaintiff that he had been harmed. Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 233, 736 N.E.2d 434 (2000).

While actual or constructive knowledge is normally a question of fact for the jury to decide, Riley v. Presnell, 409 Mass. 239, 240, 565 N.E.2d 780 (1991), the issue may be decided as a matter of law where the facts are undisputed, Khatchatourian v. Encompass Ins. Co. of Mass., 78 Mass. App. Ct. 53, 57, 935 N.E.2d 777 (2010).

The earliest date that Kotelly states he was aware of the falsity of the representations was June 2010. Compl. ¶ 32. This action was instituted five years later, in June 2015. Id. ¶¶ 89–91. Therefore, unless the statute of limitations was tolled, the record as it now stands establishes that Kotelly's claim under the MCPA is time-barred.

Plaintiffs argue that Kotelly's MCPA claim is not barred by the statute of limitations because while Kotelly first learned that his vehicle required repair in June 2010, the latest repair occurred more recently. Pl.'s Opp'n to Mot. to Dismiss, ECF No. 17, at 6 ("Opp'n"). However, the date of Kotelly's most recent repair is not relevant in determining when the statute of limitations began to accrue on his MCPA claim. Rather, the timing of Kotelly's knowledge is the relevant factor. The statute of limitations period began to run when Kotelly first

12

knew or should have known of his cause of action, which is reasonably understood to be the date that Kotelly's Class Vehicle first required maintenance and when HMA first denied Warranty coverage. The complaint states that these events occurred in June 2010. Compl. ¶¶ 32–33.

Kotelly brought this action more than four years after his cause of action accrued. Therefore, the statute of limitations has run on Kotelly's MCPA claim unless Kotelly can plausibly prove that the statute of limitations was tolled, as discussed in Section II.B, infra.

### 2. Section 349 Claims

The complaint contains allegations that HMA's deceptive trade practices violated New York General Business Law § 349. The statute of limitations applicable to § 349 bars claims that accrued more than three years before a complaint is filed. N.Y. C.P.L.R. § 214(2). A claim under § 349 begins to accrue on the date of the alleged deceptive act. See Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 789–90 (2012).

Construing the complaint in the light most favorable to plaintiffs, the Court understands the plaintiffs to set forth two categories of deceptive trade practices by HMA—deceptive trade practices occurring before plaintiffs purchased their Class Vehicles and those occurring after they did so. See Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 459–60 (laying out similar categories of deceptive trade practices).

The first category relates to allegations that HMA made misrepresentations and omissions about the performance of the Class Vehicles' brake system *prior*

to plaintiffs' purchase of their vehicles. See Compl. ¶¶ 5, 63–71. Plaintiffs Miller and Liddle allege that HMA's deceptive practices induced them to purchase the then-defective Class Vehicles. Id. ¶ 65. The statute of limitations began to accrue on the date of the purchase, at the latest, for plaintiffs' pre-purchase claims.

Plaintiff Miller purchased his Class Vehicle in November 2007, id. ¶ 24, so any deceptive act that triggered the running of the statute of limitations necessarily occurred in or before November 2007. The statute of limitations on Miller's pre-purchase § 349 expired in 2010, at the latest. Plaintiff Liddle purchased her Class Vehicle in November 2005. As with Miller, the statute of limitations on Liddle's § 349 claim expired before the complaint was filed. Id. ¶ 26. Therefore, unless Miller and Liddle's pre-purchase claims are saved by a statute of limitations defense, as discussed in Part II.B, infra, those claims are time-barred.

The second category of allegations under § 349 relates to the assertions that HMA committed deceptive acts each time it declined to cover repair or replacement costs under the Warranty, and that HMA failed to disclose information about the defects in the brake system through adequate warnings or recall notices *following* plaintiffs' vehicle purchase. See id. ¶¶ 89–91.

Miller replaced brake parts in his Class Vehicle nine times over an unspecified period of time, including once in December 2009, once in March 2010, and once in September 2011. See id. ¶¶ 27–30. Miller asked only that the December 2009 repairs be covered under Warranty, which HMA refused. Id.

Miller contends that HMA's 2009 refusal constituted a deceptive act. Further, Miller argues that HMA committed deceptive acts each time he replaced and repaired brake parts but did *not* ask HMA to cover the costs under Warranty. Id. ¶ 30.

Similarly, Liddle replaced brake parts on her Class Vehicle at least six times, most recently on April 7, 2015. Id. ¶ 50. The first of these repairs, which occurred in August 2006, was covered under Warranty, id. ¶ 47, and the complaint does not appear to allege a cause of action as to the August 2006 repair. Liddle's Class Vehicle required further repair in August 2008, and this time, HMA declined to cover the repairs under Warranty. Id. ¶ 49. Indeed, from 2008 to 2015, Liddle made additional brake repairs and replacements that HMA also declined to back under Warranty. Id. ¶ 50. Like Miller, Liddle argues that each refusal under Warranty constituted a deceptive act. Id.

HMA counters that it had no Warranty obligations beyond five years or 60,000 miles. Accordingly, any warranty claim after November 2012, in Miller's case, or November 2010, in Liddle's case, could not constitute actionable fraud. But this tells only half of the story because plaintiffs have alleged multiple theories of § 349 liability.

Plaintiffs have indeed alleged that HMA committed consumer fraud with respect to its Warranty. To state a timely § 349 claim based on an express warranty, the claim must have (1) occurred within the express warranty coverage period, *and* (2) the claim must have begun to accrue within three years of the filing of the complaint. Thus, where consumer fraud is tied to express warranty

15

claims, the question is not just whether the warranty had expired when the cause of action accrued, but also whether plaintiffs have alleged that HMA committed deceptive acts within three years of the filing of the complaint.

Plaintiffs here have also alleged theories of consumer fraud that extend beyond the Warranty. As noted above, plaintiffs plead that HMA failed to disclose information about the defects in the brake system through adequate warnings or recall notices. To state a timely claim § 349 claim based on allegations of consumer fraud that are unrelated to an express warranty, the claim must have begun to accrue within three years of the filing of the complaint.

Though Miller and Liddle provide few specific dates on which HMA committed its deceptive acts, the Court notes that it is not plaintiffs' burden to prove that their claims fall within the statute of limitations when countering HMA's motion to dismiss. Nor was it their burden to preempt HMA's affirmative defense by pleading facts to disprove that affirmative defense.

When viewed in the light most favorable to the plaintiffs, the Court finds that the complaint plausibly alleges that HMA may have committed deceptive acts less than three years before the filing of the instant complaint. Accordingly, HMA has not met its burden of proving that Miller and Liddle's claims are time-barred. Miller and Liddle's § 349 post-sale claims survive HMA's motion to dismiss to the extent that the complaint plausibly pleads that HMA's allegedly deceptive acts violate § 349.

### 3. The Warranty Claims

HMA argues that the warranty claims of plaintiffs Miller and Liddle and Kotelly are time-barred.[3] As this is a diversity case, the Court will apply New York choice of law rules to determine which state's law is applicable to the matter before the Court. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 141 (2d Cir. 2015).

In contract cases, such as where a breach of express warranty is alleged, New York courts apply a "center of gravity" or "grouping of contracts" approach. Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997) (citations omitted). Under this approach, Courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter of the contract, and the domicile or place of business of the contracting parties. Id. The places of contracting and performance are given the heaviest weight in this analysis. Id.

Plaintiffs Miller and Liddle purchased their Class Vehicles in New York, their state of domicile. Plaintiff Kotelly purchased his Class Vehicle in his home state of Massachusetts. For purposes of determining which law applies to plaintiffs' warranty claims, these states are the places of contracting and performance. See In re Frito-Lay N. Am., Inc. All Nat'l Litig., No. 12-md-2413,

---

[3] As noted above, see supra Background Part I.D, the Court declines to discuss the warranty claims of plaintiffs Riordan, McCormick, and Pierskalla, whose warranty allegations fail to plausibly state a claim on which relief may be granted.

2013 WL 4647512, at *19 (E.D.N.Y. Aug. 29, 2013).  The Court will therefore analyze Miller and Liddle's warranty claims under New York law, and Kotelly's claim under Massachusetts law.

While the applicable law in New York and Massachusetts may differ, the relevant facts are similar.  As noted above, Miller, Liddle, and Kotelly assert that their new Class Vehicles were covered by HMA's Warranty.  Compl. ¶¶ 5, 152. According to the complaint, that Warranty represented HMA's promise that newly purchased Class Vehicles would be "in proper working order," and that HMA would replace or repair Class Vehicle defects that were the result of defective material or workmanship, including issues with Class Vehicle brake systems.  Id. ¶ 156.  Where certain parts of the vehicle were not in proper working order or were defective, HMA or an HMA-authorized agent would repair or replace the malfunctioning part at no cost to the consumer.  See id. ¶ 5.

As discussed above, the Warranty does not expressly exclude or include rotors, calipers, or the brake assembly—the brake parts plaintiffs allege to be flawed in the Class Vehicles.  Id. ¶ 157.  Plaintiffs take this silence to mean that the Warranty covered rotors, calipers, and the brake assembly.  See id. ¶ 5. Thus, plaintiffs argue that HMA breached the terms of its Warranty by denying coverage to plaintiffs for rotors, calipers, and brake assembly covered by the Warranty.  Id. ¶¶ 155–63.

The statute of limitations on a breach of warranty claim under New York law is four years.  N.Y. U.C.C. Law § 2-725(1) (McKinney 2015).  Unless a warranty explicitly extends to future performance, a breach of warranty claim

accrues at the time of delivery. See Gianakakos v. Commodore Home Sys., Inc., 285 A.D.2d 907, 907, 727 N.Y.S.2d 806, 806 (3d Dep't 2001). Because "all warranties in some way apply to the future performance of goods, the normal four year limitations period generally is not extended pursuant to the future performance exception unless the warranty specifically refers to a future time." Port Auth. of N.Y. & N.J. v. Allied Corp., 914 F. Supp. 960, 963 (S.D.N.Y. 1995) (citation omitted).

If, however, a warrantor has undertaken a contractual duty that extends to a future date, the nature of the breach is said to continue to the time specified in the contract, and the statute of limitations may be tolled until that time. Beller v. William Penn Life Ins. Co. of New York, 8 A.D.3d 310, 314, 778 N.Y.S.2d 82, 85 (2004). Therefore, a Class Vehicle owner is protected under Warranty for as long as the Warranty lasts. Warranty violations may give rise to actionable claims for breach of warranty. From the date of the violation, a Class Vehicle owner has the period of time set forth in the applicable statute of limitations to file a complaint. In this way, the Warranty end date is not the trigger for the starting of statute of limitations, the Warranty *violation* is. See id.

Plaintiffs Liddle and Miller argue that their Warranties, which allegedly cover the brake parts at issue in this case, extended for five years after their purchase or until the first 60,000 miles driven after purchase, whichever came first. Therefore, the four-year statute of limitations on Liddle and Miller's warranty claims began to accrue either five years after their Class Vehicle

purchase, or from the time that Liddle and Miller's odometers reached the 60,000 mile mark.

Miller's Warranty lasted from November 2008 to November 2012, assuming he did not drive 60,000 miles on his Class Vehicle before November 2012. Miller alleged that he repaired or replaced brake parts in his Class Vehicle nine times over an unspecified period of time. See id. ¶¶ 27–30. However, Miller explicitly pled that he asked *only* that HMA cover under warranty the repairs and replacements made in 2009. See id. So while Miller may have asserted a Warranty claim within the life of his warranty, the four-year statute of limitations on that cause of action began to accrue in 2009 and expired in 2013. Therefore, Miller has not adequately pled that an actionable breach of warranty claim accrued within four years of the filing of the instant complaint.

Liddle's Warranty lasted from November 2005 to November 2010. Liddle alleges that she was wrongfully denied Warranty coverage numerous times but provides specific dates for only the first and last of these denials. Id. ¶¶ 47–50. The first Warranty denial occurred in August 2008, when Liddle's Class Vehicle was still under Warranty. Id. ¶ 49. The 2008 claim is time-barred because Liddle has brought the claim more than four years after it occurred.

The latest of these refusals occurred on April 7, 2015. Compl. ¶ 50. But while this 2015 repair occurred within four years of the filing of this complaint, Liddle has not pled that HMA had any Warranty obligation after November 2010, at the latest.

Between 2008 and 2015, "Liddle has had a total of six (6) repairs over the course of owning her Sonata," and "[n]one of these repairs were covered under the warranty." Id. ¶ 50. The complaint does not state the dates of these subsequent repairs, nor does it state that each of these repairs occurred while Liddle's Class Vehicle had fewer than 60,000 miles on it. These deficiencies are not fatal to Liddle's claim. It is, however, mathematically impossible for Liddle to assert valid Warranty claims for events occurring between 2008 and 2015 because of the twofold inquiry involved in assessing breaches of warranty, discussed above. First, the court assesses whether the requested repair or replacement occurred during the period of warranty coverage. Second, the court evaluates whether the claim for breach of warranty is time-barred.

In Liddle's case, HMA was responsible under Warranty from November 2005 to November 2010. Events occurring after November 2010 were not covered by the plain terms of the Warranty. Therefore, any causes of action for breach of warranty that Liddle may have possessed against HMA necessarily accrued prior to November 2010, meaning that November 2014 was the latest possible time period to bring her breach of warranty claims against HMA. As stated above, Liddle did not bring this action until June 18, 2015. For this reason, Liddle cannot assert a valid breach of warranty claim under the facts presented in the complaint.

Plaintiffs contend that Miller and Liddle's causes of action are not time-barred because HMA's breaches of warranty were continuing violations, and thus the statute of limitations began anew each time HMA refused to honor the

21

Warranty.  See Opp'n at 8–10.  Plaintiffs do not provide case law support for the theory that once the warranty is breached, the claim remains viable for an indefinite period thereafter based on a continuing breach of the same warranty. Moreover, plaintiffs' reasoning is antithetical to the nature of limited-time warranties.  If plaintiffs' theory were law, HMA's Warranty could last decades longer than its five-year/60,000-mile period, because any plaintiff could string together in-warranty and out-of-warranty claims across a long period of time and claim a continuing breach.

HMA also contends that Kotelly's breach of warranty claim is time-barred. Plaintiff Kotelly's Warranty claim is governed by Massachusetts law. Massachusetts provides a four-year statute of limitations on claims for breaches of warranty.  Mass. Gen. Laws ch. 106 § 2-725(2); see also Rosario v. M.D. Knowlton Co., 54 Mass. App. Ct. 796, 803, 767 N.E.2d 1126, 1132 (2002).  The cause of action begins to accrue when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  As in New York, a breach of warranty in Massachusetts "occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  Mass. Gen. Laws ch. 106 § 2-725(2).

Kotelly purchased his Class Vehicle in November 2006, meaning the Warranty extended to November 2011, at the latest, or earlier, if Kotelly drove

60,000 miles before November 2011.[4]   Assuming facts favorable to Kotelly, Kotelly had until November 2015—four years from November 2011—in which to assert his claim.

Kotelly's breach of warranty claim stems from two events:  HMA's refusal to cover repairs under Warranty in June 2010, Compl. ¶¶ 32–34, and Kotelly's anticipated need to replace his brakes in the near future, id. ¶ 35.  As for Kotelly's June 2010 assertion under the Warranty, that claim has not been timely filed. As such, it is not actionable, even if the alleged breach occurred within the Warranty period.  As for Kotelly's anticipated need to replace his brakes in the near future, Kotelly has not stated a cognizable injury, as he has not yet replaced his brakes, incurred any additional costs, or been refused Warranty coverage by HMA.  Kotelly's breach of warranty claim is therefore dismissed.

Based on the information currently before the Court, HMA has met its burden of proving that Liddle, Miller, and Kotelly's warranty claims are excluded by the statute of limitations.  The burden now shifts to plaintiffs to prove that their claims are not time-barred.

B. Statute of Limitations Defenses

Plaintiffs argue that the doctrines of equitable estoppel, equitable tolling, and relation-back revive Kotelly's MCPA and breach of warranty causes of action, and Liddle and Miller's breach of warranty claims.[5]  The estoppel and tolling

---

[4] The complaint alleges that Kotelly's class vehicle had approximately 56,000 miles on it as of June 2015, see Compl. ¶ 35, but the complaint is silent as to when Kotelly reached the 60,000-mile mark.

[5] As the Court has found that defendant's other statute of limitations arguments are without merit on the facts and law presented, see supra Parts II.A.1–3, the

arguments proceed on the theory that plaintiffs were either prevented from knowing about HMA's fraud, misrepresentations or deception, or that HMA induced plaintiffs' abstention from suing by fraud, misrepresentation or deception to refrain from filing a timely action. See Ortega Candelaria v. Orthobiologics, 661 F.3d 675, 678 (1st Cir. 2011); Opp'n at 10 (arguing in favor of applying equitable tolling and equitable estoppel).

Equitable estoppel and equitable tolling operate differently from one another. Equitable tolling is applicable where a defendant procures a plaintiff's ignorance about the plaintiff's cause of action by means of fraud or misrepresentation. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 157 (2d Cir. 2012) (applying equitable tolling where "the defendant wrongfully concealed material facts," thereby preventing "plaintiff's discovery of the nature of the claim"); Barreto-Barreto v. United States, 551 F.3d 95, 100 (1st Cir. 2008) (applying the doctrine where "plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to [his claim]"). The tolling proponent must establish that extraordinary circumstances beyond his control prevented a timely filing or that he was materially misled into missing the filing deadline. See id. at 101.

Equitable estoppel, on the other hand, "applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's conduct or statements in failing to bring suit." Ramírez-Carlo v. United States, 496 F.3d 41, 48 (1st

---

Court need only address plaintiffs' equitable defenses as to plaintiffs Kotelly, Liddle, and Miller.

Cir. 2007); <u>Conklin v. Jeffrey A. Maidenbaum, Esq.</u>, No. 12-cv-3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013).   To demonstrate entitlement to equitable estoppel, a plaintiff must show evidence of the defendant's "improper purpose or his constructive knowledge of the deceptive nature of his conduct . . . in the form of some definite, unequivocal behavior . . . fairly calculated to mask the truth or to lull an unsuspecting person into a false sense of security." <u>Ortega Candelaria</u>, 661 F.3d at 679 (internal quotation marks omitted).

It should be noted that the plaintiffs in <u>Marshall</u> (the related case referred to earlier in this opinion) advanced these theories against HMA without success. <u>See</u> <u>Marshall v. Hyundai Motor Am.</u>, 12-cv-3072 (S.D.N.Y. 2014).   In that case, too, the plaintiffs included in their complaint the conclusory statement that "Defendant[] [is] estopped from relying upon any statutes of limitation by reason of their fraudulent misrepresentation, suppression and concealment of material facts, and any applicable statutes of limitation are tolled by such conduct." <u>Compare</u> Compl. ¶ 91, <u>with</u> <u>Marshall</u>, 51 F. Supp. 3d 451, 463 (S.D.N.Y. 2014). Plaintiffs write that the instant complaint improves upon the <u>Marshall</u> complaint because now plaintiffs have alleged that HMA affirmatively misrepresented the breadth of its Warranty through its advertising campaign and withheld the information that the Class Vehicle required annual brake winterizing.   Opp'n. at 11.   But these added facts do not make equitable tolling or equitable estoppel any more applicable in this case.

25

The complaint does not allege that HMA acted in a way that prevented plaintiffs from discovering the nature of their claim once they began experiencing brake-related problems. This would be necessary for equitable tolling to apply. And the complaint does not allege facts suggesting that HMA engaged in any misrepresentations that prevented plaintiffs from bringing suit even after plaintiffs became aware of their claims, which would be required for equitable estoppel to apply. Rather, it seems that plaintiffs discovered the brake problems, immediately asked HMA to cover repairs under the Warranty, and received a swift refusal from HMA. Compl. ¶¶ 26, 32, 37, 47–49, 52, 58. In short, plaintiffs have not pled facts suggesting either that they did not know of the brake defects, or that HMA tried to conceal the Class Vehicles' defects to prevent plaintiffs from suing.

HMA's mere failure to disclose past wrongs does not give rise to an equitable estoppel statute of limitations defense. Rather, plaintiffs are required to "allege[] an act of deception, separate from the ones for which they sue, on which an equitable estoppel could be based." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 789, 967 N.E.2d 1177 (2012).

Plaintiffs previously and unsuccessfully asserted equitable estoppel and equitable tolling defenses in the related Marshall action. See Marshall, 51 F. Supp. 3d at 465. Here, as in Marshall, plaintiffs have failed to plead that they were duly diligent in determining why their Class Vehicles' brakes needed repair and why HMA refused to cover the repair or replacement. See id. In fact, the instant complaint does not allege that plaintiffs took any action aside from

repairing their vehicles' brakes, seeking warranty coverage, and paying for that service personally after warranty coverage was denied. For example, in plaintiff Miller's case, he asserted his rights under Warranty only once, in 2009, and paid out of pocket for subsequent repairs without even notifying HMA that he believed he was owed benefits under his Warranty. See Compl. ¶¶ 27–30. Failure to plead due diligence is fatal to plaintiffs' equitable estoppel and equitable tolling defenses.

Additionally, plaintiffs argue that, even if some of their statutory claims fall outside of the applicable statute of limitations, those claims relate back to the 2012 filing of Marshall. Opp'n at 13. The Court of Appeals has rejected such an application of the relation-back theory in the class action context. Reliance Ins. Co. v. PolyVision Corp., 292 F. App'x 106, 107–08 (2d Cir. 2008).

Moreover, this argument is specious when viewed in light of the plain text of Federal Rule of Civil Procedure 15(c). "[T]he concept of relation back permits parties to modify claims already filed, not to file entirely new lawsuits." See Fed. R. Civ. P. 15(c); Palatkevich v. Choupak, 152 F. Supp. 3d 201, 226 (S.D.N.Y. 2016); see also Reliance Ins. Co. v. Polyvision Corp., 292 F. App'x 106, 108 (2d Cir. 2008) (summary order) (declining to permit the plaintiff's complaint to relate back to a separate, previous filing); Lucchesi v. Experian Info. Sols., Inc., 226 F.R.D. 172, 174–75 (S.D.N.Y. 2005) ("The Federal Rules of Civil Procedure contemplate[] the relation back of pleadings only in the context of a single proceeding."). Thus, the relation-back doctrine is relevant to amended pleadings in the context of a single proceeding, and the single case that plaintiffs' cite does

27

not support a contrary reading. Opp'n at 13. Here, plaintiffs seek to relate back the instant complaint to the pleadings in a separate proceeding. This approach is a misuse of Rule 15(c) and does not salvage any claims whose statutes of limitation have expired.

Consequently, the Court has found that plaintiff Kotelly's MCPA and warranty claims are time-barred,[6] as are plaintiff Miller and Liddle's warranty claims. These time-barred claims are dismissed. However, plaintiffs Liddle and Miller have alleged timely causes of action under § 349.

C. Economic Loss Rules and the UTPCPL

Plaintiff McCormick has alleged that HMA violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq., when it sold Class Vehicles and knowingly concealed that the Class Vehicles had manufacturing, materials, and/or workmanship defects. Compl. ¶¶ 140–54. HMA has moved to dismiss the UTPCPL claim on the basis that it is barred by Pennsylvania's "economic loss rule." Mot. to Dismiss at 13–15.

The UTPCPL prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3. The law defines and enumerates "unfair or deceptive acts or practices" in § 201-2. Though the complaint does not specify which sections of the UTPCPL HMA allegedly violated, McCormick does allege that HMA engaged in conduct that, if it were committed, would violate multiple provisions of the UTPCPL. See Compl. ¶¶ 140–54. For example,

---

[6] Accordingly, the Court need not address the parties' arguments concerning the sending of a pre-suit demand letter per Massachusetts law, Mass. Gen. Laws ch. 93A § 9(3). See Mot. to Dismiss at 11–13; Opp'n at 14–15.

plaintiff first claims that HMA concealed the Class Vehicles' manufacturing, materials, and/or workmanship defects. This action would constitute a violation of the prohibition against "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have . . . ." 73 P.S. § 201-2(4)(v). If a motor vehicle dealer fails to make required disclosures about a car's status or misrepresents certain qualities of a vehicle, Pennsylvania law considers these acts to be "unfair methods of competition and unfair or deceptive acts or practices." 37 Pa. Code § 301.2. The regulation specifically prohibits dealers from misrepresenting facts in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading. See id. § 301.2(6). Furthermore, HMA might be said to have violated the "catchall" provision of the UTPCPL, which provides that it is unlawful to "[e]ngag[e] in any other fraudulent conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201–2(4)(xxi).

HMA contends that, even if McCormick has stated a plausible cause of action under the UTPCPL, the "economic loss rule" bars McCormick's UTPCPL claim on the basis that plaintiffs should not be able to "recover[] in tort economic losses to which their entitlement flows only from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995). Put differently, the doctrine prevents a plaintiff from recovering economic losses in tort without physical injury. "Where [a] plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania law says that plaintiff's

29

redress comes from the law of contract, not the law of tort." Stein v. Fenestra Am., No. 09-5038, 2010 WL 816346, at *3 (E.D. Pa. Mar. 9, 2010).

Even with the above parameters in mind, courts interpreting Pennsylvania law do not consistently define or apply the economic loss rule. See Burke v. Honeywell Int'l, Inc., No. 15-cv-1921, 2016 WL 1639820, at *7 (E.D. Pa. Apr. 26, 2016) (citing cases). This Court need not do endeavor to do so here. Regardless of the current reach of the economic loss rule, the rule does not apply if the fraud is "extraneous to the alleged breach of contract, not interwoven with the breach of contract." McGuckin v. Allstate Fire & Cas. Ins. Co., 118 F. Supp. 3d 716, 721 (E.D. Pa. 2015). Breaches of warranty tend to be treated like breaches of contract under Pennsylvania law. See Jerry Davis, Inc. v. Md. Ins. Co., 38 F. Supp. 2d 387, 392 (E.D. Pa. 1999). Thus, in the breach of warranty context, the economic loss rule does not apply where the alleged fraud is "extraneous" to the alleged breach of warranty.

McCormick has not plausibly alleged that she was eligible under the Warranty, and thus does not plausibly state that any warranty was breached. See Part I.D, supra. Consequently, McCormick's UTPCPL claim is not "interwoven" with any claim for breach of warranty. Her UTPCPL claim is therefore not barred by the economic loss rule.

D. Statutory Consumer Fraud Claims

Defendant asserts that plaintiffs' consumer fraud claims should be dismissed because they are inadequately pled. As each state law claim has its own pleading standards, and some of plaintiffs' claims trigger the heightened

pleading standards found in Federal Rule of Civil Procedure 9(b), the Court will analyze each state law consumer fraud claim in the following subsections.

### 1. Heightened Pleading Requirements Applicable to Statutory Fraud Claims

Plaintiffs alleging fraud under Massachusetts, Illinois, Minnesota, and Pennsylvania law must satisfy the heightened pleadings standard set forth in Federal Rule of Civil Procedure 9(b). See Martin v. Mead Johnson Nutrition Co., No. 09-cv-11609, 2010 WL 3928707, at *4 (D. Mass. Sept. 30, 2010) (applying Rule 9(b) to allegations of fraud under the MCPA); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co., 631 F.3d 436, 446 (7th Cir. 2011) (Illinois Consumer Fraud and Deceptive Business Practices Act); Tuttle v. Lorillard, 118 F. Supp. 2d 954, 963 (D. Minn. 2000) (Minnesota Consumer Fraud Act); In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (UTPCPL). "[A]ny claim sounding in fraud must satisfy the requirements of the heightened pleadings standard regardless of what label the pleader assigns to it." Declude, Inc. v. Perry, 593 F. Supp. 2d 290, 297 (D. Mass. 2008).

While particularity under Rule 9(b) may not require "every material detail of the fraud such as the date, location, and time," plaintiffs must plead with precision and provide "some measure of substantiation into their allegations of fraud." Rockefeller, 311 F.3d at 216 (3d Cir. 2002) (internal quotations and citations omitted). Courts have held that, in the case of a claim of fraudulent misrepresentation, Rule 9(b) requires that the plaintiff "identify the fraudulent statement or representation, the person making the statement, and when the

statement was made." Crisp Human Capital Ltd. v. Authoria Inc., 613 F. Supp.

2d 136, 140 (D. Mass. 2009).

     To the extent a claim does not involve fraud, the claim is not subject to the

heightened pleading requirement. See, e.g., In re Direxion Shares ETF Tr., 279

F.R.D. 221, 229 n.4 (S.D.N.Y. 2012). Where portions of a complaint sound in

contract and other portions sound in fraud, and no effort is made to show any

other basis for the claims levied against the defendant, the touchstone inquiry is

whether the gravamen of the complaint sounds in fraud. See Rombach v. Chang,

355 F.3d 164, 172 (2d Cir. 2004). Determining if allegations sound in consumer

fraud is not done by reference to a hard and fast rule, and courts examining

fraud allegations in the consumer fraud context tend to take a holistic approach.

See, e.g., In re Ford Fusion & C-Max Fuel Econ. Litig., No. 13-md-2450, 2015

WL 7018369, at *13 (S.D.N.Y. Nov. 12, 2015); Pirelli Armstrong Tire Corp. v.

Walgreen Co., No. 09-c-2046, 2010 WL 624709, at *6 (N.D. Ill. Feb. 18, 2010);

Meserole v. Sony Corp. of Am., No. 08-cv-8987, 2009 WL 1403933, at *5

(S.D.N.Y. May 19, 2009); Tuttle, 118 F. Supp. 2d at 963; Samuels v. Am. Motors

Sales Corp., No. 87-c-7804, 1989 WL 95787, at *6 n.6 (N.D. Ill. Aug. 9, 1989).

     To determine whether a claim sounds in fraud, courts have looked to

whether a complaint alleges more than just unfair practices or deceptive

conduct. See, e.g., Pirelli, No. 09-c-2046, 2010 WL 624709, at *7; Seldon v.

Home Loan Servs., Inc., 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009). As part of

this inquiry, courts look for references to "specific misrepresentations" in the

complaint, as opposed to general conduct alleged to constitute unfair or

deceptive practices.  See, e.g., Samuels, No. 87-c-7804, 1989 WL 95787, at *6 n.6.  Additionally, courts consider whether the complaint contains "averments classically associated with fraud," namely, allegations of "fraudulent concealment," "fraudulent misrepresentations," and "deceptive practices," based on a defendant's "knowing acts."  See, e.g., In re Ford Fusion, No. 13-MD-2450, 2015 WL 7018369, at *13.

After applying these multi-jurisdictional principles to the consumer fraud claims at issue, the Court finds that the gravamen of plaintiffs' statutory claims is fraud.  While it is true that the statutes under which plaintiffs pled their consumer fraud cover unfair trade practices as well as deceptive ones, plaintiffs' complaint explicitly and repeatedly references HMA's fraudulent and deceptive practices and, taken as a whole, appears to allege deceit by HMA.

The structure of the complaint also indicates that plaintiffs intended to state separate causes of action in fraud and contract.  Plaintiffs made this clear when they alleged in separate counts their statutory claims (Counts I–VI) and their single breach of warranty claim (Count VII).  The complaint even pleads separate bases for the warranty and fraud claims by alleging that HMA made fraudulent misrepresentations and omissions independent of the claims made in the Warranty.  See, e.g., Compl. ¶¶ 25, 65.

Additionally, the complaint contains language "classically associated with fraud," namely:

(1) Defendant "actively concealed and failed to disclose the existence and nature of said defects."  Id. ¶ 3.

(2) "Defendant's advertising, promoting and marketing of the fitness, safety and warranty benefits of the Class Vehicles was deceptive because of the fact that the known defect in the braking system was not disclosed." Id. ¶ 65.

(3) Defendant "knew, or should have known, that the brake assemblies on these vehicles were defective . . . [but] nevertheless, failed to disclose the existence and nature of said defects in any advertisements, agreements, publications, websites, owner manuals, warranty agreements or literature given to new purchasers of the vehicle." Id. ¶ 66.

(4) "Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendant has, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the brake system." Id. ¶¶ 97, 118, 133, 145.

These allegations, when taken together, suggest to the Court that plaintiffs' statutory claims sound in fraud. The fraud claims must therefore be held to comply with the heightened pleading standard of Rule 9(b).

The complaint alleges that HMA made actionable representations and omissions concerning the Class Vehicles. Specifically, HMA "represented to Plaintiff that it thoroughly inspected the vehicle, including its braking system, and that the entire vehicle was in good condition and fit for its intended purpose." Compl. ¶ 25. However, the complaint does not indicate when those statements were made or in what context they were made. What is more, these allegations appear in the section specific to plaintiff Miller, and the complaint does not allege that HMA made these or similar representations to any other plaintiff at any time. See id.

Plaintiffs do allege that HMA made certain representations to Miller and other class members concerning the importance of vehicle inspection, "that their vehicles provided a high level of performance and at an affordable price, and that

34

'Hyundai operated the world's largest integrated automobile manufacturing facility which included complete state-of-the art testing facilities.'" Id. However, the complaint fails to specifically provide the source of these representations, where and how they occurred, or the dates on which they occurred. And again, because this information appears in the fact section relevant to Miller, it is unclear whether any plaintiff, apart from Miller, actually perceived or was the target of these alleged representations.

Similarly, the complaint references the allegedly fraudulent and misleading nature of HMA's advertising, promotion, and marketing, e.g., id. ¶ 65, but provides no information about the content, context, or timing of those statements. Apart from quoting HMA's slogan "America's best warranty," the complaint largely fails to identify any misleading statements or omissions in advertising that plaintiffs allege constitute fraud.

For these reasons, and to the extent plaintiffs' Massachusetts, Illinois, Minnesota, and Pennsylvania law claims sound in fraud, the Court finds that those claims are not well-pled as required by Rule 9(b) and, accordingly, they are dismissed.

## 2. Deceptive Trade Acts & Practices Under New York Law

The Second Circuit has held that an action under § 349 is not subject to the pleading-with-particularity requirements of Federal Rule of Civil Procedure 9(b). Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); see also Leonard v. Abbott Labs., No. 10-cv-4676, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) ("Pelman . . . establish[es] a categorical rule that [§ 349] claims,

35

regardless of whether they 'sound in fraud,' or are premised on specific misrepresentations rather than an 'advertising scheme,' are not subject to the heightened pleading requirement of Rule 9(b).").  Rather, § 349 pleadings need only meet the bare-bones notice-pleading requirements of Federal Rule of Civil Procedure 8(a).  <u>Pelman</u>, 396 F.3d at 511.

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff allege facts sufficient to place the defendant on notice of the nature and scope of the claims against it.  <u>Twombly</u>, 550 U.S. at 545 ("Rule 8(a)(2) requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'").  While Rule 8 sets forth a liberal standard, courts have dismissed misrepresentation and breach of warranty claims where allegations failed to plead facts sufficient to put a defendant on notice of the nature and scope of the claims.  <u>See</u> <u>Torchlight Loan Servs. v. Column Fin., Inc.</u>, No. 11-cv-7426, 2012 WL 3065929, at *5 (S.D.N.Y. July 25, 2012) (citing cases).

As applied to Miller and Liddle's § 349 claims, the complaint must allege facts that state a plausible claim for relief for fraud under New York law.  Section 349 proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]," N.Y. Gen. Bus. Law § 349(a), and provides a private right of action to "any person who has been injured by reason of any violation of th[e] section," <u>id.</u> § 349(h).  Although "[j]ustifiable reliance by the plaintiff is not an element of [a § 349] claim," <u>Koch</u> <u>v. Acker, Merrall & Condit Co.</u>, 967 N.E.2d 675, 676 (N.Y. 2012), a plaintiff under

that statute must ultimately "prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act," Stutman v. Chem. Bank, 731 N.E.2d 608, 611 (N.Y. 2000); see also Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (same). A plaintiff must also prove that defendant's actions caused the injury. Stutman, 731 N.E.2d at 612–13.

HMA moves to dismiss the New York consumer fraud claim under § 349 on the basis that the complaint fails to adequately plead the causation or materiality prongs of fraud. Mot. to Dismiss at 15–18. HMA is correct that a plaintiff must allege that a defendant's materially misleading statements caused actual injury. To properly allege causation, a plaintiff must state in his complaint that he had seen the misleading statements of which he complains before he came into possession of the products he purchased. Gale v. Int'l Bus. Machs. Corp., 9 A.D.3d 446, 447, 781 N.Y.S.2d 45 (2d Dep't 2004), cited in Rapcinsky v. Skinnygirl Cocktails, No. 11-cv-6546, 2013 WL 93636, at *6 n.3 (S.D.N.Y. Jan. 9, 2013).

Here, HMA asserts that the complaint fails to point to pre- and post-purchase deceptive conduct that caused injury to plaintiffs. Def.'s Reply Mem. of L. in Supp. of Mot. to Dismiss, ECF No. 20 at 13–15. The Court disagrees.

The complaint alleges the existence of misleading statements, marketing, and advertising, e.g., Compl. ¶ 25, then alleges that "[d]efendant actively and knowingly misrepresented to [p]laintiffs Miller and Liddle and the New York Sub-

37

Class Members at the time of purchase or lease that the Class Vehicles . . . did not contain a material defect, were in good working order, not defective and merchantable," id. ¶ 96(a).   Further, with respect to post-sale conduct, the complaint alleges that HMA failed either to give adequate warnings and notices of known defects or to disclose the fact of the defective brake system.   Id. ¶¶ 96(b)–(c).   That conduct, plaintiffs allege, is and was "deceptive, false, fraudulent and constitutes an unconscionable commercial practice," id. ¶ 97, and "[p]laintiffs Miller and Liddle and members of the public were deceived by and relied upon [d]efendant's affirmative misrepresentations and failures to disclose," id. ¶ 99.   "As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices," the complaint continues, "[p]laintiffs Miller and Liddle the New York Sub-Class Members have been damaged."   Id. ¶ 100.   The Court finds that plaintiffs have sufficiently pled causation under the minimal pleading requirements of Rule 8(a).

Next, HMA contends that plaintiffs have failed to plausibly allege the materiality element of fraud.   Materially "[d]eceptive practices are acts which are dishonest or misleading in a material respect," and "[d]eceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances."   Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) (alterations and internal quotation marks omitted); see also Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (explaining that "[t]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer

acting reasonably under the circumstances'" (quoting <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank</u>, 647 N.E.2d 741, 745 (N.Y. 1995))); <u>Boule v. Hutton</u>, 328 F.3d 84, 94 (2d Cir. 2003) ("[A] deceptive practice 'need not reach the level of common-law fraud to be actionable under [§] 349.'" (quoting <u>Stutman</u>, 731 N.E.2d at 612)).  In the case of omissions, § 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation." <u>Oswego</u>, 647 N.E.2d at 745.  "The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information." <u>Id.</u>

HMA argues that plaintiffs have failed to plead materiality, since "not one [p]laintiff alleges that—had he or she known that HMA would not cover all component replacements and maintenance services—he or she would have acted differently." Mot. to Dismiss at 17 (internal quotation marks omitted).

HMA's argument is misguided because it is merely another way of asking plaintiffs to prove reliance under § 349.  Plaintiffs need neither prove nor plead actual reliance on their § 349 claim.  <u>Stutman</u>, 731 N.E.2d at 612–13.  Indeed, the New York Court of Appeals has held that, under § 349, it is enough that "defendant's material deception caused [plaintiffs] to suffer a [financial] loss." <u>Id.</u>

Here, plaintiffs have satisfied the materiality requirement for pleading in regard to § 349.  Plaintiffs have alleged that HMA concealed "material facts" about the Class Vehicles allegedly faulty brake system, Compl. ¶ 98, and that HMA's conduct allegedly included "material omissions," <u>id.</u> ¶ 97.  Plaintiffs have

further alleged that these material misrepresentations and omissions "deceived" plaintiffs and were "relied upon" by plaintiffs. Id. ¶ 99. Nothing more is required.

## Conclusions

For the reasons set forth in this opinion, the following claims are dismissed with prejudice because they are time-barred under the applicable statutes of limitation: Kotelly's MCPA claim, and Miller, Liddle, and Kotelly's warranty claims. Plaintiffs McCormick, Pierskalla, and Riordan's warranty claims are dismissed without prejudice because those plaintiffs failed to plausibly plead that their Class Vehicles fell under Warranty. Likewise, Counts II through VI, encompassing plaintiffs' causes of action under the Illinois, Minnesota, Massachusetts, and Pennsylvania consumer fraud statutes are dismissed without prejudice, as the Court found the allegations not to be sufficient under Federal Rule of Civil Procedure 9(b).

What remains are Liddle and Miller's claims under the New York law, N.Y. Gen. Bus. Law § 349. If the complaint is indeed limited to Liddle and Miller's state-law claims, the amount in controversy may no longer be sufficient under either 28 U.S.C. § 1332(a) or the Class Action Fairness Act, 28 U.S.C. § 1332(d). In that case, the Court would lack subject-matter jurisdiction over this matter.

The Court will defer this determination until the Court has conferred with counsel about resolving this issue

SO ORDERED.

Dated:      New York, New York
            September 28, 2016

_____
Thomas P. Griesa
U.S. District Judge