UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/29/17

STEVE MILLER, RICHARD KOTELLY,
KATHLEEN RIORDAN, CHARLENE
LIDDLE, KRISTA PIERSKALLA, and
REBECCA McCORMICK, on behalf of
themselves and all others similarly
situated,

       Plaintiffs,

  v.

HYUNDAI MOTOR AMERICA,

       Defendant.

15-cv-4722 (TPG)

**OPINION**

Before this court is defendant Hyundai Motor America's ("HMA") motion to dismiss plaintiffs' First Amended Complaint ("FAC"). Plaintiffs, a putative nationwide class of all purchasers and lessees of the Hyundai Sonata, model years 2006 through 2010 ("Class Vehicle"), are represented by six named plaintiffs—Steve Miller, Richard Kotelly, Kathleen Riordan, Charlene Liddle, Krista Pierskalla, and Rebecca McCormick. They bring suit on behalf of themselves and all others similarly situated.

While the FAC sets forth eleven separate causes of action, these claims all relate to the alleged defects of the Class Vehicles' braking system. Plaintiffs' claims are twofold. First, they allege that HMA is responsible and liable under warranty for the repair and replacement costs that plaintiffs have incurred as a result of the alleged defects. Secondly, plaintiffs allege that HMA "actively

concealed and failed to disclose the existence and nature of said defects . . . at the time of purchase and thereafter." ECF No. 29, at 2. These allegations form the basis of plaintiffs' claim for breach of express warranty and their claims under various state consumer protection laws.

HMA moves to dismiss these claims on a number of grounds, arguing that the FAC, like the original complaint, "fails to adequately allege the facts necessary to proceed beyond the motion to dismiss stage." ECF No. 31, at 1. For the reasons given below, defendant's motion to dismiss is granted in part and denied in part. Specifically, the court dismisses plaintiffs' breach of warranty claims and plaintiff Pierskalla's claim under Minnesota's Consumer Fraud Act, Minn. Stat. § 325F.69. The court denies HMA's motion, however, as to plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 and Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1.

### Background & Relevant Procedural History

The court assumes familiarity with the factual background of this case, which is recounted at length in this court's September 28, 2016 decision. *See Miller v. Hyundai Motor America*, No. 15-cv-4722, 2016 WL 5476000 (S.D.N.Y. Sept. 28, 2016); *see also* ECF No. 23. The original complaint included eight causes of action, of which all but two were dismissed. The court refers to its prior decision here to the extent necessary to give context to the analysis that follows.

### I. Massachusetts Consumer Protection Act Claim

The court dismissed plaintiff Kotelly's claim under the Massachusetts Consumer Protection Act Claim ("MCPA") as barred by the MCPA's four-year statute of limitations. *See* ECF No. 23, at 11-13. The court held that the statute of limitations period on Kotelly's MCPA claim began to run at the time he first knew or should have known about his cause of action—in other words, the first time that HMA denied warranty coverage when Kotelly's Class Vehicle required maintenance. *See* ECF No. 23, at 11-12. As Kotelly alleges that HMA first denied him coverage of his vehicle's required maintenance in June 2010, his claim expired in June 2014, one year before the original complaint was filed. *See* ECF No. 23, at 12-13. Thus his complaint was dismissed with prejudice.

## II. New York General Business Law § 349 Claims

The court understood plaintiffs Miller and Liddle's claims under N.Y. Gen. Bus. Law § 349 (McKinney 2017) to set forth two categories of deceptive trade practices under that section—pre-purchase acts and post-sale acts. *See* ECF No. 23, at 15-16. The court dismissed the pre-purchase § 349 claims as barred by the governing three-year statute of limitations. *See* ECF No. 23, at 14. As plaintiff Miller purchased his Class Vehicle in November 2007 and plaintiff Liddle purchased his Class Vehicle in November 2005, the limitations period for both claims expired before the claim was filed. *See* ECF No. 23, at 14. With respect to the alleged post-sale deceptive acts, however, the court found that plaintiffs Miller and Liddle plausibly alleged facts that HMA may have committed such acts within three years of filing the original complaint. *See* ECF No. 23, at 16. These claims, therefore, survived defendant's motion to dismiss.

## III. The Warranty Claims

The court dismissed the plaintiffs' claims for breach of HMA's New Vehicle Limited Warranty ("Limited Warranty"), which lasted "5 years from the date of original retail delivery or date of first use, or 60,000 miles, whichever occurs first." ECF No. 14, Ex. 1, at 21. The court dismissed plaintiffs Riordan, McCormick, and Pierskalla's claims without prejudice, for failing to allege facts sufficient to show their leased or pre-owned vehicles were covered under the Warranty. *See* ECF No. 23, at 8.

The court dismissed plaintiffs Miller, Liddle, and Kotelly's breach of warranty claims with prejudice as time-barred, occurring outside of the warranty period, and also for failure to allege a cognizable injury. The court applied New York's four-year statute of limitations to plaintiffs Miller and Liddle's breach of warranty claims. *See* ECF No. 23, at 18. Plaintiff Miller's cause of action expired in December 2013, prior to the filing of the complaint in June 2015. *See* ECF No. 23, at 20. Plaintiff Liddle's first alleged breach of warranty claim expired in August 2012, years before the complaint was filed. *See* ECF No. 23, at 20. Plaintiff Liddle's second claim arose from an alleged breach in April 2015, when her vehicle was no longer covered under the Limited Warranty. *See* ECF No. 23, at 20. The court applied Massachusetts's four-year statute of limitations to plaintiff Kotelly's breach of warranty claim. *See* ECF No. 23, at 22. His cause of action expired in June 2014, one year before the complaint was filed. *See* ECF No. 23, at 23. The court found that plaintiff Kotelly's claim based on *anticipated*

repairs, on the other hand, failed to state a cognizable injury. *See* ECF No. 23, at 23.

## IV.  The State Consumer Protection Claims

A. Heightened Pleading Under Federal Rule of Civil Procedure 9(b)

With respect to the state consumer protection claims, the court held that to the extent plaintiffs' claims under Massachusetts, Illinois, Minnesota, and Pennsylvania law sounded in fraud, those claims were dismissed, without prejudice, as not well-pled under the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See* ECF No. 23, at 35. The court determined that these claims were subject to Rule 9(b) because the gravamen of plaintiffs' complaints sounded in fraud. *See* ECF No. 23, at 32. The factors contributing to this determination included the complaint's explicit and repeated references to HMA's fraudulent and deceptive practices; the structure of the complaint, which separated plaintiffs' warranty-related claims and assertions from plaintiff's fraud-related claims and assertions; and the complaint's use of language classically associated with fraud. *See* ECF No. 23, at 32-34. The court found that the assertions underlying plaintiffs' fraud claims lacked critical details such as when certain misleading statements were made, who made them, who perceived them, and in what context. *See* ECF No. 23, at 34. With respect to HMA's marketing practices, "[a]part from HMA's slogan 'America's best warranty,' the complaint largely failed to identify any misleading statements or omissions in advertising that plaintiffs allege[d] constitute[d] fraud." *See* ECF No. 23, at 35.

B. Pleading Standards Under § 349

As Rule 9(b)'s heightened pleading standard does not apply to § 349 claims, the court addressed plaintiffs Miller and Liddle's claims separately, applying the pleading standards under Federal Rule of Civil Procedure 8. *See* ECF No. 23, at 35-36. While HMA argued that the claims failed on the causation and materiality prongs of § 349, the court disagreed, and Miller and Liddle's claims survived the motion to dismiss. *See* ECF No. 23, at 37-39.

C. Unfair Trade Practices and Consumer Protection Law

The court rejected HMA's argument that plaintiff McCormick's claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") was necessarily barred under the "economic loss rule." *See* ECF No. 23, at 30. As the rule does not apply where the alleged fraud is "extraneous" to, and not "interwoven with" a breach of warranty, the court found that the economic loss rule could not bar McCormick's claim when she had not adequately pled eligibility under the Warranty. *See* ECF No. 23, at 30. Without having adequately stated a claim for breach of warranty, her UTPCPL claim could thus not be said to be "interwoven with" such a claim.

**DISCUSSION**

The court now looks to the new allegations and claims contained in the FAC, in the context of the court's rulings regarding the original complaint. The court disregards, however, any new allegations related to plaintiff Kotelly's MCPA claim, or to plaintiffs Miller, Liddle, and Kotelly's warranty claims, which were dismissed with prejudice. *See* ECF No. 23, at 28. Res judicata attaches to claims

dismissed with prejudice and "has the effect of a final adjudication on the merits." *Samuels v. N. Telecom, Inc.*, 942 F.2d 834 (2d Cir. 1991). Plaintiffs Miller, Liddle, and Kotelly are thus "barred from pleading claims in an Amended Complaint that were asserted in the original complaint and were dismissed." *Law Offices of Oliver Zhou v. Citibank N.A.*, No. 15 Civ. 5366 (ER), 2017 WL 979062, at *2 (S.D.N.Y. Mar. 13, 2017).

That being the case, the court now considers the allegations contained in plaintiffs' FAC as they pertain to: (1) plaintiffs Pierskalla, McCormick, and Riordan's breach of warranty claims; and (2) the claims under the various state consumer protection statutes.

## I.  The Warranty Claims

Plaintiffs allege that HMA breached the express terms of its Limited Warranty by "refus[ing] to repair the [defects] for Plaintiffs and Class members" when issues arose during the coverage period. ECF No. 29, at 65. The court dismissed plaintiffs Pierskalla, McCormick, and Riordan's warranty claims without prejudice, because they failed to plausibly allege that their vehicles were covered under the Limited Warranty. *See* ECF No. 23, at 8. While the original complaint made clear that the warranty applied to *newly purchased* vehicles, it was silent with respect to leased and pre-owned vehicles. The FAC now clearly alleges that both are covered—"the new vehicle 'bumper to bumper' express warranty [is] given to *all purchasers or lessees* of new Sonatas" ECF No. 29, at 3 (emphasis added), and, "[u]pon *sale or transfer* of the vehicle . . . the new owner is entitled to the benefit of the warranty, which is transferrable." ECF No. 27, at

65 (emphasis added). While the original complaint was also unclear as to whether plaintiff Pierskalla had leased or purchased her vehicle, the FAC now clearly alleges that plaintiff Pierskalla purchased a used 2009 Sonata with approximately 20,000 miles in September 2010. ECF No. 29, at 14-15.

In its motion, HMA does not dispute that the Warranty extends to lessees and owners of pre-owned vehicles, but rather, argues that the plaintiffs fail to state a claim for breach of warranty for independent deficiencies. HMA makes three primary arguments with respect to plaintiffs' breach of warranty claims: (1) that plaintiffs allege, "at most, a design defect," not covered under the Limited Warranty; (2) that plaintiffs Pierskalla and McCormick "have failed to allege that they presented their vehicles for warranty service in connection with the alleged defect within the requisite time and mileage warranty limitations"; and (3) that plaintiffs Riordan and Pierskalla have failed to allege that they relied on the Limited Warranty at the time they purchased their Class Vehicles. ECF No. 31, at 14, 16, 23. As the court will explain, the alleged defect is one of design, and thus, plaintiffs fail to allege a warrantable defect.

A. Design Defect

HMA's first argument with respect to plaintiffs' warranty claims relates to the characterization of the alleged defect. Specifically, HMA argues that plaintiffs allege, "at most, a design defect," ECF No. 31, at 14, which is "not covered by the Limited Warranty's promise to repair or replace defects in material or workmanship." ECF No. 40, at 4. Accordingly, HMA contends that plaintiffs "do

not offer a plausible basis for inferring [the Class Vehicles] contained a manufacturing defect." ECF No. 31, at 14.

Plaintiffs respond that the FAC "alleges quite clearly" a manufacturing defect, noting that similar allegations survived HMA's motion to dismiss in both *Haag v. Hyundai Motor America,* 969 F. Supp. 2d 313 (W.D.N.Y. 2013) and *Marshall et al. v. Hyundai Motor America,* 51 F. Supp. 3d 451 (S.D.N.Y. 2014).[1] HMA, however, urges the court to "adopt[] the design/manufacturing defect distinction" applied in subsequent "putative automotive class actions." ECF No. 40, at 5; *see also Catalano v. BMW of N. Am., LLC,* 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016); *Garcia v. Chrysler Grp. LLC,* 127 F. Supp. 3d 212, 226 (S.D.N.Y 2015). Ultimately, the court finds that the allegations in this case are most appropriately characterized as a design defect and thus, not covered under the Limited Warranty.

The FAC describes the alleged defects in significant detail. In the exhibits attached to the sealed FAC, plaintiffs furnish "internal, non-public" reports, photographs, and commentary related to the allegedly defective components of the Class Vehicle braking systems. *See* ECF No. 29, Exs. 1–5. Having reviewed this information, the court understands the FAC, at bottom, to articulate three related allegations—a defect common to all Class Vehicles (premature corrosion),

---

[1] *Marshall v. Hyundai Motor Am.,* No. 12-cv-3072 (S.D.N.Y.) is a related case and a separate matter, also pending before this court. As the court noted in its September 28, 2016 decision: "*Marshall* involves a putative class of Hyundai Sonata purchasers whose vehicles are alleged to have defective rotors, calipers, and brake assemblies. . . . The *Marshall* action is limited to plaintiffs who are residents of the state of New York. . . . No plaintiff in the instant case alleges that he or she is, or ever was, a putative class member in the Marshall action." *Miller,* 2016 WL 5476000, at *4 (S.D.N.Y. Sept. 28, 2016).

the root cause of that common defect (inadequate materials selection), and its consequences (brake pad seizure). Put differently, plaintiffs allege that HMA selected and used insufficient materials in the Class Vehicle braking systems, which caused premature corrosion of the brake system components, and ultimately resulted in seizure of the brake pads inside the carrier and sliders. ECF No. 29, at 17, 21, 22–23. Plaintiffs argue that this "materials defect" is covered under the Limited Warranty's "materials and workmanship" provision. ECF No. 38, at 17.

"[A] warranty that protects against defects in materials or workmanship covers manufacturing defects, but not design defects." *Catalano*, 167 F. Supp. 3d at 555 (citing *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 226-27 (S.D.N.Y. 2015)). The critical difference between manufacturing defects and design defects is the intention of the manufacturer. *See Urena v. Biro Mfg. Co.*, 114 F.3d 359, 363 (2d Cir. 1997). A manufacturing defect is a mistake—an unintended deviation from normal or routine production that renders an ordinarily safe product dangerous. *See Catalano*, 167 F. Supp. 3d at 555. Design defects, on the other hand, "involve products made in the precise manner intended by the manufacturer," which are unreasonably dangerous as designed. *Urena*, 114 F.3d at 363.

As plaintiffs point out, the courts in *Haag* and *Marshall* rejected HMA's design defect argument, reasoning that "[w]hether the alleged defects arose from a faulty design, faulty materials or faulty workmanship [could not] be ascertained absent discovery, since any information concerning the true origin of the alleged defect

is within the sole possession of [HMA]." *Marshall*, 51 F. Supp. 3d at 467. HMA persuasively counters, however, that after "years of discovery" in those cases, the plaintiffs here "stand in a very different position" from cases in which plaintiffs "could not be expected to know the nature of the alleged defect at the motion to dismiss stage." ECF No. 40, at 5. The court agrees with defendants.

A comparison of the original complaint and the FAC makes it obvious that the discovery period has assisted plaintiffs in strengthening their consumer protection claims insofar as they allege HMA knew of and concealed the purported defect. However, the same assertions work to undermine plaintiff's manufacturing defect theory in connection with their breach of warranty claims. Indeed, plaintiffs' are unequivocal that HMA *knew* the pertinent materials were inadequate *"well in advance of selecting* the materials for the Sonata brake system," demonstrating that HMA acted with purpose. ECF No. 29, at 22 (emphasis added). And while plaintiffs assert that "an intentional selection of defective materials should be as violative of the Warranty . . . as a negligent or inadvertent one," it simply does not violate it as a manufacturing defect. ECF No. 38, at 16. While a deliberate selection of defective materials may perhaps form the basis for a claim under other laws, including the consumer protection laws discussed *infra,* an intentional decision—even one made in bad faith—is at odds with the concept of unintended deviation inherent to manufacturing defects.

As was the case in *Catalano*, plaintiffs' "common defects" theory also "strongly suggest[s] that this was an intentional decision on the part of [HMA]." *Catalano*, 167 F. Supp. 3d at 555. The very definition of the putative class as *"all* persons

in a particular area who purchased and/or leased a 2006 to 2010 Sonata automobile" contradicts the nature of manufacturing defects, which, "by definition, are imperfections that inevitably occur in a typically small percentage of products of a given design as a result of the fallibility of the manufacturing process." *Gunn v. Hytrol Conveyor Co.*, No. 10-CV-00043, 2013 WL 2249241, at *8 (E.D.N.Y. May 22, 2013). And because plaintiffs have failed to allege, for example, facts to suggest "a flaw in [HMA]'s global manufacturing process," the court cannot reasonably infer the existence of a manufacturing defect among the Class Vehicles. *Catalano*, 167 F. Supp. 3d at 555. Thus the court concludes that the FAC fails to allege a warrantable defect and accordingly dismisses plaintiffs Pierskalla, McCormick, and Riordan's claims for breach of warranty.

B. <u>Time and Mileage Limitations</u>

Additionally, for the reasons below, plaintiff Pierskalla's claim is dismissed with prejudice as time-barred.

HMA's Basic Limited Warranty extends five years "from the date of original retail delivery or date of first use, or 60,000 miles, whichever occurs first." ECF No. 27, at 4. Accordingly, plaintiffs must plead facts that plausibly allege the breach occurred both within five years of the date of original retail delivery and before the vehicle reached 60,000 miles. Moreover, plaintiffs must plead facts that plausibly allege their claim was filed within the applicable statute of limitations for a breach of warranty claim. *Beller v. William Penn Life Ins. Co. of New York*, 778 N.Y.S.2d 82, 85 (N.Y. App. Div. 2d Dep't 2004). In other words, plaintiffs must plausibly allege that the breach occurred while the vehicle was

still under warranty *and* that the claim was filed within the relevant statute of limitations.

Because this is a diversity case, the court applies New York choice of law rules to determine which state's law governs the matter at hand. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015). As described in this court's September 28, 2016 Opinion, New York applies a "center of gravity" or "grouping of contracts" approach in contracts cases, including claims for breach of express warranty. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997). While courts may consider a range of pertinent contacts, the place of contracting and the place of performance are most significant in this analysis. *Id.* Plaintiff Pierskalla purchased her Class Vehicle in Minnesota, her state of domicile. ECF No. 29, at 14. Under the "center of gravity" approach, the court will therefore analyze plaintiff Pierskalla's warranty claim under Minnesota law.

Minnesota's statute of limitations for a breach of warranty claim is four years from the time of delivery. *See Dietz Bros. v. Klein Tools, Inc.*, No. C9-92-1136, 1993 WL 19709, at *3 (Minn. Ct. App. Jan. 26, 1993). However, as described in the September 28, 2016 ruling, where "a warrantor has undertaken a contractual duty that extends to a future date, the nature of the breach is said to continue to the time specified in the contract, and the statute of limitations may be tolled until that time." ECF No. 23, at 19. Thus, Pierskalla had four years from the time of the alleged Limited Warranty violation to file a claim. ECF No. 23, at 19.

Plaintiff Pierskalla alleges that she brought her Class Vehicle to the dealership for brake-related issues on three occasions—November 2012, May 2013, and December 2014. ECF No. 29, at 15. As a cause of action arising from any of these alleged incidents would fall within Minnesota's four-year statute of limitations,[2] the relevant inquiry is whether an actionable breach of the Limited Warranty occurred within five years and when the vehicle was under 60,000 miles. The court determines it did not.

Plaintiff Pierskalla purchased a used 2009 Hyundai Sonata with approximately 20,000 miles from a private seller in September 2010. ECF No. 27, at 14. Plaintiffs contend that Pierskalla has "adequately allege[d] that she began to experience the defects of [the vehicle's] rear brakes within the 5-year/60,000 mileage durational limits of the Basic Warranty." ECF No. 38, at 20. However, the relevant date is that of the breach—the denial of "requested repair or replacement." ECF No. 23, at 21. Plaintiff Pierskalla alleges only that HMA refused to cover her brake repairs in December 2014, when "the vehicle was just out of warranty." ECF No. 27, at 15.[3]

Plaintiff Pierskalla's earlier experiences did not implicate the Limited Warranty. During her first visit to a Hyundai dealership in November 2012, the service technician did not find any problems related to the brake parts at issue

---

[2] A cause of action arising from the November 2012 events expired in November 2015. A cause of action arising from the May 2013 events expired in May 2017. A cause of action arising from the events of the December 2014 events expired in December 2017. The June 18, 2015 complaint was filed before any of these three causes of action expired.

[3] It is unclear whether the vehicle had reached 60,000 miles or five years had passed since the original purchase. Nevertheless, plaintiffs' submission that the vehicle was "just out of warranty" obviates the need to answer this question. ECF No. 27, at 15.

in this matter. ECF No. 27, at 15. The technician did, however, discover "debris built up in the rear brake shoes," prompting plaintiff Pierskalla to pay $40 for a cleaning, a service not covered under the Limited Warranty.[4] ECF No. 27, at 15. During her second dealership visit in May 2013, the service technician could not replicate the "burning smell" that plaintiff Pierskalla complained she was experiencing and found no problem with the brakes. ECF No. 27, at 15. Neither of these experiences constituted an actionable breach of warranty, as HMA did not refuse warranty coverage on either occasion. Accordingly, Pierskalla's only actionable claim occurred when "the vehicle was just out of warranty," and thus her warranty claim is dismissed with prejudice. ECF No. 27, at 15.

## II. Consumer Protection Claims

HMA moves to dismiss plaintiffs Riordan, Pierskalla, and McCormick's claims brought under various state consumer protection statutes on the ground that they do not satisfy the heightened pleading requirements contained in Federal Rule of Civil Procedure 9(b). Plaintiffs contend that the FAC satisfies the heightened pleading standard, and that their claims for deception are now pled with sufficient particularity under a "material omissions theory." ECF No. 38, at 10. Plaintiffs further contend that their new, "separately pleaded counts for

---

[4] In the Limited Warranty, "cleaning" is listed under the section heading "What's Not Covered." ECF No. 14, Ex. 1, at 19. Cleaning *is* covered, however, when "performed as part of a covered *warrantable repair.*" ECF No. 14, Ex. 1, at 19(emphasis added). Here, the court acknowledges that this exception speaks to some degree to plaintiffs' larger contentions in this matter. Still, because plaintiffs submit that the cleaning was related to an issue (debris build up) and a part (brake shoes) that appear nowhere else in the allegations set forth in the FAC, the court does not endeavor to determine whether this cleaning was "performed as part of a covered *warrantable repair.*" ECF No. 14, Ex. 1, at 19 (emphasis added).

'unfair' conduct," brought under the same provisions, do not trigger the requirements for pleading fraud under Rule 9(b). ECF No. 38, at 10.

Taking up plaintiffs' latter contention, the unfair conduct allegations, while pleaded separately in the FAC, do not escape the heightened pleading standard of Rule 9(b), as "the gravamen of the complaint" still sounds in fraud. ECF No. 23, at 32. Like the consumer protection counts in the original complaint, the new, separately pleaded claims for unfair conduct "allege more than just unfair practices or deceptive conduct," and focus on HMA's "knowing acts." ECF No. 23, at 32-33 (internal quotations omitted) (quoting *In re Ford Fusion & C-Max Fuel Econ. Lit.*, No. 13-MD-2450, 2015 WL 7018369, at *13 (S.D.N.Y. Nov. 12, 2015)). Within the separately pleaded counts, for example, plaintiffs refer to the fact that HMA "concealed," and "possessed prior knowledge" of the defect, which are the "averments classically associated with fraud" that courts look for when determining whether Rule 9(b) applies. Thus, regardless of the labels or words plaintiffs use to describe the new causes of action, looking at the allegations holistically, the court determines that the unfair conduct causes of action are subject to heightened pleading under Rule 9(b). The court therefore examines the sufficiency of these allegations in conjunction with the deceptive conduct allegations below.

A. Sufficiency Under Rule 9(b)

As the previous decision stated, "[p]laintiffs alleging fraud under . . . Illinois, Minnesota, and Pennsylvania law must satisfy the heightened pleading standard set forth in . . . Rule 9(b)." ECF No. 23, at 31. Under Rule 9(b), parties must state

the "circumstances constituting fraud . . . with particularity." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Complainants alleging *affirmative misrepresentations* must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (emphasis added) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see also Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 233 (S.D.N.Y. 2015). Complainants alleging *material omissions* must set forth "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Garcia*, 127 F. Supp. 3d at 233 (emphasis added) (citations omitted) (quoting *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-cv-7500, 2015 WL 585589, at *7 (S.D.N.Y. Feb. 11, 2015)). Rule 9(b) relaxes the pleading standard with respect to the defendant's state of mind, requiring only general allegations that "give rise to a strong inference of fraudulent intent." *Loreley Fin. No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006); *see also* Fed. R. Civ. P. 9(b).

While the FAC alleges both affirmative misrepresentations and material omissions, plaintiffs are correct to point out that their allegations are largely omission-based. ECF No. 38, at 10. Indeed, the heart of the plaintiffs' allegations is HMA's active and intentional concealment of the claimed defect. Thus, the court looks to the sufficiency of "the who, what, when and where of [HMA]'s

omissions." *Garcia*, 127 F. Supp. 3d at 233. The court finds that plaintiffs have pled these matters with the particularity required under Rule 9(b).

HMA mischaracterizes plaintiffs' amended complaint insofar as it contends plaintiffs have submitted no more "than what this Court already found to be deficient." ECF No. 40, at 4. HMA's focus on plaintiffs' failure to include "the 'source' and 'context' of the information they 'actually perceived' when purchasing or leasing their vehicles," speaks more to the court's analysis of the affirmative misrepresentations asserted in the original complaint. ECF No. 40, at 4. In the FAC, with the addition of six exhibits and a host of new factual assertions, it is clear that plaintiffs essentially allege that HMA failed to disclose that the Class Vehicle braking systems are subject to systematic premature corrosion. While HMA is correct that plaintiffs are not free to simply plead less detail with respect to their omissions theory, *see* ECF No. 40, at 3, there are, of course, practical limitations inherent to omissions-based pleading that require the court to ask a slightly different set of questions. *See Garcia*, 127 F. Supp. 3d at 233 (describing the inquiry for omission-based allegations).

The FAC sets forth information suggesting HMA was aware of the premature corrosion of the Class Vehicle's braking system and took measures to address the issue as a result of internal and HMA-affiliate recommendations. Most significantly, the FAC contains internally-generated quality reports, pre-distribution testing, affiliate-generated reports, and field service evaluations, which plaintiffs allege describe the defect and show that HMA was on notice of the defect. *See* ECF No. 29, at 17-23; *see also* ECF No. 29, Exs. 1–5. The

Hyundai–Kia America Technical Center, Inc. Report ("HATCI Report"), for example, which "sought to discern the common problems caused by the corroded brakes," recommended that HMA consider "a mass production fix" and develop methods to address the issue via Technical Service Bulletin. ECF No. 29, at 20 & Ex. 1. Plaintiffs allege that instead of following this course of action, HMA repeatedly charged customers for brake service "far short of the 60 month, 60,000 mile warranty guarantee" to "temporarily inhibit corrosion," with knowledge that such service would be continually necessary and come "at the customer's expense." ECF No. 29, at 20.

The court finds that taken together, these reports and allegations are sufficient to support an inference that HMA had knowledge of the alleged defect at the time the plaintiffs purchased their vehicles. Plaintiffs have thus stated the circumstances constituting the alleged fraud with the particularity required under Rule 9(b).

B. <u>Sufficiency Under State Statutes</u>

1. Illinois

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), a plaintiff must show: (1) "a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury." *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1290 (Ill. App. Ct. 2013). As the ICFA does not require plaintiffs to establish scienter or provide proof of actual reliance,

the statute "affords broader protection to consumers than the common law of fraud." *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 809 (N.D. Ill. 2013). Still, the ICFA does require plaintiffs to show both that they would have made a different purchasing decision "*but for* the defendants' conduct," *Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir. 2010), and "that they would have been in a materially better position had they done so." *Wiegel*, 946 F. Supp. 2d at 809.

Plaintiff Riordan alleges that HMA was aware of the Class Vehicles' defects, including the tendency of the braking systems to corrode prematurely. ECF No. 29, at 45. Plaintiff supports this allegation with the internally-generated reports and findings attached to the FAC. ECF No. 29, Ex. 1–5. Plaintiff Riordan further alleges that HMA failed to disclose these defects. ECF No. 29, at 45. Finally, plaintiff alleges that HMA's omission was material insofar as plaintiff would have paid less for her Class Vehicle "had [she] been informed of the defect." ECF No. 29, at 48. These allegations are sufficient under the ICFA at this stage of the proceedings.

### 2. Minnesota

To state a claim under Minnesota's Consumer Fraud Act ("CFA"), a plaintiff "need only plead that the defendant engaged in conduct prohibited by the [CFA] and that the plaintiff was damaged thereby." *Graphic Communs. Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 693 (Minn. 2014). The CFA prohibits "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice." Minn. Stat. § 325F.69, subd. 1 (2017). Omission-based claims are actionable under the CFA only "when special

circumstances exist that trigger a legal or equitable duty to disclose the omitted facts." *Graphic Communs.*, 850 N.W.2d at 695. While one party to a transaction owes the other no duty of disclosure under Minnesota law, Minnesota courts have identified a non-exclusive set of special circumstances that trigger such a duty: (1) "a confidential or fiduciary relationship with the other party"; (2) "special knowledge of material facts to which the other party does not have access"; and (3) when a person is speaking, "they must say enough to prevent the words communicated from misleading the other party." *Id.* (citing *Klein v. First Edina Nat'l Bank,* 196 N.W.2d 619, 622 (Minn. 1972)).

Viewing plaintiff Pierskalla's allegations under Minnesota's CFA framework, the court concludes that her claim must fail as a matter of law. Plaintiff Pierskalla does not allege sufficient facts to support an inference that HMA had a duty to disclose to her the allegedly omitted facts. The FAC does not make clear whether plaintiff Pierskalla ever directly transacted with HMA. *See* ECF No. 29, at 14 ("Plaintiff Pierskalla purchased a used 2009 Sonata vehicle . . . *from a private seller.*" (emphasis added)). Even if special circumstances existed, the duty to disclose is limited to the confines of the transacting parties. Thus, plaintiff Pierskalla does not allege facts sufficient to show that HMA owed her a duty of disclosure, and her claim is therefore dismissed.

### 3. Pennsylvania

Because the court dismissed plaintiffs' breach of warranty claims, it does not re-examine HMA's arguments with respect to the economic loss rule as it applies to plaintiff McCormick's claim under the UTPCPL. The court reiterates its

reasoning in the September 28, 2016 ruling—plaintiff McCormick's UTPCPL claim is not "interwoven" with a breach of warranty claim because she has not stated such a claim. *See* ECF No. 23, at 30.

"The UTPCPL provides a private right of action for anyone who 'suffers any ascertainable loss of money or property' as a result of 'an unlawful method, act or practice.'" *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 321 (Pa. Super. Ct. 2015) (quoting *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151–52 (Pa. Super. Ct. 2012) (citations omitted)). The statute's catchall provision prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Bennett*, 40 A.3d at 152 (emphasis omitted) (quoting 73 Pa. Cons. Stat. § 201–2(4)(xxi) (2017)). Pennsylvania courts "liberally construe the UTPCPL in order to effect the legislative goal of consumer protection." *Aberts v. Verna*, No. 1214 EDA, 2017 WL 319026, at *12 (Pa. Super. Ct. Jan. 23, 2017) (citing *Pennsylvnia ex rel. Creamer v. Monumental Properties, Inc.*, 329 A.2d 812, 816 (Pa. 1974)).

A plaintiff bringing a claim under the UTPCPL must plead facts sufficient to show a duty to disclose the omitted facts and reliance the pertinent omissions. *See Zwiercan v. Gen. Motors Corp.*, No. 3235, 2002 WL 31053838, at *3-5 (Pa. Com. Pl. 2002). Under Pennsylvania law, sellers have a duty to speak "in the context of a business transaction with an ordinary non-business consumer, when the seller has superior knowledge of a material fact that is unavailable to the consumer." *Id.* at *4. A plaintiff must also show that she justifiably relied "on the defendant's wrongful conduct or representation and . . . suffered harm as a

result." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004). A plaintiff can establish omission-based reliance—i.e., reliance "on a statement that was never uttered"—by showing "that they would not have purchased a product had they been aware of the defect." *Id.* at *5. Moreover, "when a duty to speak exists, reliance by the class plaintiffs is implicit and is established by operation of law." *Id.* at *5 (citing *Katlin v. Tremoglie*, No. 9706-2703, 1999 WL 1577980 (Pa. Com. Pl. 1999)).

Plaintiff McCormick has pled facts sufficient to state a claim under the UTPCPL. As an "an ordinary non-business consumer," plaintiff McCormick has alleged facts sufficient to show that HMA, as a seller, had "superior knowledge of a material fact" that was unavailable to her, triggering its duty to speak. *Zwiercan*, 2002 WL 31053838, at *4. Indeed, this contention is at the very heart of the FAC. *See, e.g.*, ECF No. 29, at 18-22 (referring to "internal, non-public document[s] known only to Defendant" that contained information about the alleged premature corrosion of the Class Vehicle braking systems). Having pled facts that support an inference of a duty to disclose on the part of HMA, reliance is thus "implicit and is established by operation of law" under the UPTCPL. *Yocca*, 854 A.2d at 438. Plaintiff McCormick's claim under the UTPCPL thus survives HMA's motion to dismiss.

## CONCLUSIONS

For the reasons described above, the court grants in part and denies in part defendants HMA's motion to dismiss the FAC. As a result of this opinion, the surviving claims are as follows: (1) plaintiff Liddle and Miller's post-purchase

§ 349 claims, and (2) plaintiffs Riordan and McCormick's claims under the ICFA, 815 Ill. Comp. Stat. 505 (2017) and the UTPCPL, 73 Pa. Cons. Stat. § 201-1 (2017), respectively.

The court also redirects the parties to file supplemental briefing with respect to the question the court raised in the previous decision—whether, in light of the number of claims that have been dismissed, the amount in controversy still satisfies the requirements of 28 U.S.C. § 1332(a) and the Class Action Fairness Act, 28 U.S.C. § 1332(d).

SO ORDERED.

Dated: New York, New York
       September 29, 2017

Thomas P. Griesa
U.S. District Judge